**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Nathaniel COLEMAN,
Defendant-Appellant.**

No. 77–1844.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 11, 1978.

Decided Dec. 18, 1978.

Certiorari Denied April 2, 1979.
See 99 S.Ct. 1786.

P. Scott Neville, Jr., Chicago, Ill., for defendant-appellant.

Richard A. Hanning, Asst. U. S. Atty., Hammond, Ind., for plaintiff-appellee.

Before FAIRCHILD, Chief Judge, NICHOLS, Associate Judge *, and WOOD, Circuit Judge.

FAIRCHILD, Chief Judge.

Appellant Coleman was convicted of an offense defined by 18 U.S.C. § 665.[1]

Count I of the indictment charged that:

" . . . Coleman, being the assistant director of the General Services Department of the City of Gary, Indiana, an agency receiving financial assistance under the Comprehensive Employment and Training Act of 1973, did embezzle, wilfully misapply, steal and obtain by fraud for his own personal use and enrichment for political purposes, moneys, funds, assets and property which were the subject of a grant under said Act, to wit: the services of employees participating in the Adult Work Experience Program of the Gary Manpower Administration, a prime sponsor under the Comprehensive Employment and Training Act of 1973 which services were of a value of . . . $4,500 . . . ."

Defendant moved for dismissal, asserting among other things that services of employ-

---

\* Associate Judge Philip Nichols of the United States Court of Claims is sitting by designation.

1. 665. Theft or embezzlement from manpower funds; improper inducement—(a) Whoever, being an officer, director, agent, or employee of, or connected in any capacity with, any agency receiving financial assistance under the Comprehensive Employment and Training Act of 1973 embezzles, willfully misapplies, steals, or obtains by fraud any of the moneys, funds, assets, or property which are the subject of a grant or contract of assistance pursuant to this Act shall be fined not more than $10,000 or imprisoned for not more than two years, or both; but if the amount so embezzled, misapplied, stolen, or obtained by fraud does not exceed $100, he shall be fined not more than $1,000, or imprisoned not more than one year, or both.

ees are not "moneys, funds, assets, or property" under 18 U.S.C. § 665. The district court denied the motion, concluding that the word "property" is broad enough to encompass services, and that the theft, embezzlement or misapplication of "services" paid for by funds supplied under a CETA grant is an offense described in § 665.

Count I was tried, with a verdict of guilty, the only other count being dismissed before trial.

The proof reflected the theory of Count I, that a city employee's use for private benefit of the services of trainees, under a CETA program, compensated out of CETA funds, amounted to embezzlement or willful misapplication of property which was the subject of the CETA grant.

The evidence established that a special crew of five men, paid with CETA funds, was assigned by Gary Manpower (an agency of the City) to the General Services Department of the City, of which Coleman was Assistant Director. Despite limitations imposed upon use of such employees by statute and regulations[2] precluding their use for political purposes and personal en-

richment, Coleman directed the crew to construct political signs for the mayoral primary campaign, and to perform various tasks in his construction business and otherwise for private benefit.[3]

■ To obtain a conviction under § 665 the government must prove two elements:

(1) that the accused was an officer, director, agent or employee of, or connected in any capacity with an agency receiving financial assistance under CETA;

(2) that the accused embezzled, willfully misapplied, stole, or obtained by fraud "moneys, funds, assets, or property which are the subject of a grant or contract of assistance."

■ Defendant appears to argue that under the arrangements for the CETA grant,[4] Gary Manpower, rather than the City of Gary, was the "agency receiving financial assistance" under CETA, and that defendant, a city employee attached to a different department of the City, did not fulfill element (1) above. It may well be argued that the City itself was the "agency receiving financial assistance" under CETA, so that

---

**2.** 29 U.S.C. § 990 provides:

§ 990. Political activities prohibited

The Secretary shall not provide financial assistance for any program under this Act which involves political activities; and neither the program, the funds provided therefor, nor personnel employed in the administration thereof, shall be, in any way or to any extent, engaged in the conduct of political activities in contravention of chapter 15 of Title 5, [United States Code, 5 U.S.C.S. §§ 1501 et seq.].

29 U.S.C. § 845(c)(3) requires assurance by the prime sponsor that "the public services provided by such jobs . . . be designed to benefit the residents of such areas."

**3.** During the summer of 1975 AWEP workers painted houses, constructed a dog run and dog house, poured a residential foundation, built a fence, and fulfilled contracts Coleman had with the Veterans' Administration (VA) to maintain yards in VA held homes and to clean the Coroner's office. Menial chores around Coleman's home were also done by AWEP personnel.

**4.** Department of Labor testimony at trial explained the funding arrangements as follows: CETA programs are funded by the Department of Labor and administered by state and local governments (the prime sponsors). The prime

sponsor either administers the program directly or uses subagencies working for it to carry out the program activities. In this case, the City of Gary (the prime sponsor) and the Department of Labor signed an agreement in which Gary Manpower was designated as the local agency with regulatory responsibilities over the funds. Gary Manpower administered two programs for the prime sponsor: the Adult Work Experience Program (AWEP) which provided short-term employment (6 months to one year) in sub-professional jobs and the Public Service Employment Program (PSEP) which provided extended employment (one to two years) at the journeyman level. Administrative expenses and wages for program participants were paid directly by Gary Manpower from the Department of Labor grant funds. Because the primary purpose of CETA is to provide employment and training, Gary Manpower entered into subordinate agreements with other municipal agencies for the use of AWEP trainees. The General Services Department of which defendant-appellant Coleman was Assistant Director had entered into such an agreement. The agreement involved no payment between the two municipal agencies, however. General Services was bonded to issue GMA checks during the employment period.

any employee of the City fulfills element (1). Even if a narrower view be taken, that Gary Manpower was the "agency," there was an agreement that the City's General Services Department would use some of the trainees, and defendant was Assistant Director of that Department. We think that defendant had sufficient responsibility for participation in the program so that he would be deemed "connected in any capacity" with Gary Manpower for the purpose of § 665.

■ Defendant further argues that services of persons compensated out of grant money are not "property . . . the subject of a grant," and that misappropriation of such services is not theft, embezzlement, or willful misapplication of such property.

The decision of the Ninth Circuit in *Chappell v. United States*, 270 F.2d 274, 276–78 (1959) provides some support for defendant's contention that § 665 should be construed narrowly and according to the more traditional meanings of its terms. In *Chappell* an Air Force sergeant was charged with converting to his own use the services of an airman in painting, during duty hours, property of the sergeant. The statute there considered provided a penalty for one who "knowingly converts to his use . . . any record, voucher, money, or thing of value of the United States . . . or any property made or being made under contract for the United States." Applying strict construction, the court decided that the services misappropriated were not a thing of value subject to conversion.

The Third Circuit has recently suggested that *Chappell* had been too narrowly decided, although in the present case the court found a technical larceny and thus did not need to reach a broader interpretation of § 641. *United States v. Di Gilio*, 538 F.2d 972, 978 (3d Cir. 1976). These cases under § 641 are the closest cited to the situation at hand.

Whatever the proper interpretation of § 641, we have a different statute before us. Congress was entrusting large sums to non-federal agencies to accomplish the purposes of CETA. A principal purpose was providing paying jobs to trainees. In § 665 Congress was exerting its power to protect these funds from misuse at the hands of employees of these agencies. Concededly as to tangible property the protection extended to that which was purchased by the funds as well as the funds themselves. Much of the funds, however, were expected to be spent to compensate people for services; the programs are intended to generate jobs. Recognizing that the term "property" is protean, capable of assuming varied meanings depending on context, and that the criminal law does not of necessity adopt the most restrictive meaning as the "literal terms," there is no reason to suppose that Congress intended to withhold protection from services purchased while extending the protection to tangible property purchased. Willful misapplication of services generated by the granted funds is indistinguishable from willful misapplication of funds themselves. A right to benefit of services for which one pays is a property right. In the CETA context, we feel a contrary result would accomplish an absurd interpretation of the statute, one that should not be imputed to Congress by a court having the proper degree of respect for that body. Thus, we think the word "property" need not be narrowly construed so as to include tangibles, but exclude services.

■ Accordingly, we agree with the district court that the services of trainees contemplated by the program and compensated by the granted funds were property which is the subject of a CETA grant and that a § 665 offense has been charged and proved.

■ We find no error in the district court's permitting a witness to testify with regard to provisions of the Hatch Act as they applied to AWEP participants assigned to the City of Gary. Under 29 U.S.C. § 990, *supra*, note 4, all forms of political activity are forbidden agencies and personnel which get CETA funds. Section 990 specifically incorporates the Hatch Act's prohibitions. Thus, testimony regard-

ing the Hatch Act could have been the substance of an instruction. It would be relevant to the question whether making political signs by AWEP workers was appropriately paid for with CETA funds.

■ We find no reversible error as a result of the trial court's failure to provide definition of the terms "willfully misapplies," "steal," or "obtain by fraud." The only term defined by the court was "embezzlement." The record shows, however, that instructions tendered by appellant Coleman did not include definitions of these additional terms. We agree with the government's position that failure to tender specific instruction constituted a waiver and that there was not plain error.

The judgment of the district court is AFFIRMED.