**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Frank Peter BALISTRIERI, John H.
Balistrieri, and Joseph P. Balistrieri,
Defendants-Appellants.**

**Nos. 84–2002, 84–2349 and 84–2350.**

United States Court of Appeals,
Seventh Circuit.

Argued May 21, 1985.

Decided Nov. 20, 1985.

Rehearing and Rehearing En Banc
Denied Jan. 8, 1986.

Nathan Z. Dershowitz, Dershowitz & Eiger, P.C., Alan Dershowitz, Dershowitz & Eiger, P.C., New York City, Stephen M. Glynn, Shellow, Shellow & Glynn, S.C., Milwaukee, Wis., for defendants-appellants.

William C. Bryson, Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before BAUER, ESCHBACH, Circuit Judges, and SWYGERT, Senior Circuit Judge.

BAUER, Circuit Judge.

This case involves the appeal from three convictions that resulted from an FBI sting operation into organized crime in the Milwaukee, Wisconsin, area. During October 1981 a grand jury returned four indictments as a result of the government's investigation. In the first indictment, seven people were charged with various gambling and tax offenses stemming from an illegal gambling business in Milwaukee. That case was tried in September 1983 and resulted in five of the defendants being convicted on various counts. Three of the convicted defendants appealed, and those convictions were affirmed by another panel of this court on November 12, 1985, in *United States v. Balistrieri*, 779 F.2d 1191 (7th Cir., 1985) (*Balistrieri* I).

The second indictment resulted in this case.[1] That indictment charged Frank, Joseph, and John Balistrieri, Benjamin Ruggiero, and Mike SaBella with one count of conspiracy to carry out an extortion scheme, 18 U.S.C. § 1951, and the Balistrieris and Ruggiero with one count of attempting to carry out the extortion scheme. *Id.* Ruggiero pled guilty to both counts. Following a six-week jury trial, all three Balistrieris were found guilty on both counts of the indictment; SaBella was acquitted. On July 30, 1984, the district court sentenced Frank Balistrieri to thirteen years imprisonment, to be served concurrently with the sentence he received on his gambling conviction, a $5,000 fine and the costs of the prosecution. John and Joseph Balistrieri were each sentenced to eight years imprisonment and $20,000 fines. These appeals followed and we now affirm.

---

1. The third indictment charged John Balistrieri and a co-defendant with mail fraud. After their acquittal in December 1983, the government dismissed the fourth indictment, which charged John and Joseph Balistrieri with mail fraud.

## I

The essential facts in this extortion scheme are that between May 1978 and February 1979 the Balistrieris, Ruggiero, and allegedly SaBella conspired to extort sums of money and a one-half partnership interest in the Best Vending Company. FBI Agent Gail Cobb, using the alias Tony Conte, operated the Best Vending Company. Between 1976 and 1981, FBI Special Agent Joseph Pistone was operating under the alias Donnie Brasco as an undercover agent investigating organized crime activities in New York City. During this time he developed a close working relationship with Ruggiero, who described himself as a member of the Bonanno crime family of New York. Pistone mentioned to Ruggiero that Cobb had moved to Milwaukee and was trying to open a vending machine business there.

Subsequently Ruggiero told Cobb that the vending business in Milwaukee was controlled by "the mob" and that Cobb could not enter that business without "protection" from the mob figures who controlled that business. After inducing Cobb to pay money to him, Ruggiero arranged for Cobb to meet with Frank Balistrieri, so that Cobb could obtain permission from Balistrieri to do business in Milwaukee.

On July 29, 1978, Cobb had a meeting with Frank Balistrieri and others in Milwaukee during which Frank Balistrieri made threats against Cobb because Cobb had attempted to start a vending machine business in Milwaukee without his permission. Later, in the presence of John and Joseph Balistrieri, Frank Balistrieri told Cobb that he was to share his vending business with the Balistrieris. Cobb agreed to permit the Balistrieris to become secret partners in his business, and the Balistrieris began directing Cobb in his conduct of the business.

## II

 The first issue raised on appeal is the defendants' contention that a new trial must be ordered because Judge Warren, to whom this case originally was assigned in the district court, did not recuse himself from this case until September 28, 1983, after denying a number of defendants' pretrial motions. The trial in this case did not begin until March 1984.

The essential reason for which the Balistrieris sought Judge Warren's recusal in this case and in the gambling case, to which he also was assigned, was their belief that Judge Warren was biased against the Balistrieris. The basis for their belief is that while serving as Wisconsin's Attorney General from 1969 to 1974, Judge Warren allegedly formed a belief that Frank Balistrieri was the head of the Milwaukee "mob" and had announced that he would take "dead aim" against Frank Balistrieri.

This recusal claim is essentially the same claim which Frank Balistrieri raised earlier in *Balistrieri* I. In that case the panel ruled that Judge Warren was not required to recuse himself. *Balistrieri* I, at 1201–02, 1204. We adopt that analysis as part of our decision in this case, and find that no error arose from Judge Warren's decision to recuse himself six months before the trial in this case.

## III

The second challenge which the Balistrieris raise is to the district court's decision to move the jury selection to the Green Bay Division of the Eastern District of Wisconsin.[2] On February 1, 1984, the district court, *sua sponte*, entered an order directing that jury selection in this case would be conducted in Green Bay rather than in Milwaukee, and subsequently ruled that after selection the jury would be moved to Milwaukee for the trial.

The district court's actions in this case to select the jury from the Green Bay division only is governed by Rule 18 of the Federal

---

**2.** This division is administrative for jury selection purposes and is not statutory, like many district court divisions.

Rules of Criminal Procedure which states in part:

> The court shall fix the place of trial within the district with due regard to the convenience of the defendant and the witnesses and the prompt administration of justice.

The court explained that it believed conducting jury selection in Green Bay was necessary for several reasons. First, in light of the difficulty that the court encountered in selecting a jury in the gambling case, and in light of the publicity surrounding the post-verdict events in that case, the court concluded that the selection of jurors from the Milwaukee area "would unduly elongate the procedure and conceivably diminish the quality of those willing to serve." Second, because of the "considerable amount of publicity" in the Milwaukee area media about the contacts with jurors after the first Balistrieri trial, the court noted that it might be necessary to question prospective jurors "about their knowledge of claims that prior juries on a 'Balistrieri case' had been questioned by a private investigator, visited unannounced at work by a lawyer and perhaps even 'harassed' after completing their service." Finally, the court added that it appeared that potential jurors in the Green Bay area had not been exposed, to any significant degree, to the same information. The court then stated that if it proved to be too difficult to obtain jurors under these circumstances, the court would reconsider the procedure and explore other alternatives with the parties.

▋ The defendants seek to assign error to the district court's decision in this case in part because they allege that he relied upon speculative factual considerations unsupported by the record established in this case. We begin our analysis by recognizing that a trial court has broad discretion in deciding where to fix the location of the trial which will not be overridden on appeal as long as the court gives "due consideration" to the factors listed in Rule 18. *United States v. Truglio*, 731 F.2d 1123, 1130 (4th Cir.1984). We think

that the facts and considerations recited by the district court evidence that such due consideration was given. The only inconvenience to the defendant in this case was that the jury was selected in Green Bay without the inclusion of Milwaukee jurors in the venire. But the jury is not required to be selected either from the entire district or from the division in which the crime was committed. *Zicarelli v. Dietz*, 633 F.2d 312, 317 (3d Cir.1980), *cert. denied*, 449 U.S. 1083, 101 S.Ct. 868, 66 L.Ed.2d 807 (1981). Moreover, the fact that the Green Bay venire may have been more "rural" than a Milwaukee jury venire might have been does not violate a defendant's right to a jury drawn from a cross-section of the community. *Zicarelli v. Gray*, 543 F.2d 466 (3d Cir.1976).

The defendants also contend that the court failed to substantiate on the record that the adverse publicity from the previous trials involving the Balistrieris would make it more tedious in this case to select a jury. We think this argument is somewhat amazing in light of the extensive arguments that Frank Balistrieri makes in his appeal from his gambling conviction that he is entitled to a new trial because of the "adverse publicity" surrounding the first trial involving the Balistrieris. Judge Evans tried all three of the Balistrieri cases. It is ludicrous to assume that the trial in each case occurs in a vacuum or that he should ignore a record built in a previous case. There was ample reason for Judge Evans to be concerned about the ability of the parties to select quickly an unbiased jury. Given his broad discretion under Rule 18 to set the place of trial, we think that he acted quite prudently in choosing to exclude Milwaukee jurors from the venire.

### IV

The defendants next challenge the district court's denial of an evidentiary hearing on its motion to suppress certain evidence. In *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme Court held that the fruits of a search based on a warrant affidavit con-

taining an intentional or reckless material misstatement must be suppressed. In order for the district court to hold such a hearing, the defendant must first make a "substantial preliminary showing" that the affiant's statements were deliberately or recklessly false, and that they were material to the issuance of the warrant. 438 U.S. at 155–56, 170–72, 98 S.Ct. at 2676–77, 2683–85.

In this case the district court, on the basis of an affidavit on October 20, 1979, from Agent Michael DeMarco, authorized taps of five telephone lines at two restaurants and the interception of oral communication from a table at one restaurant and a booth at the second. The DeMarco affidavit contained a number of statements reporting statements made by Frank Balistrieri on July 29 and August 27, 1978, in the presence of Agent Cobb.

■ In support of his suppression motion, Balistrieri submitted affidavits from himself and others present on those two days denying the statements DeMarco attributed to Frank Balistrieri. The panel in *Balistrieri* I examined the 110 page affidavit submitted by Agent DeMarco and concluded that even without the statements challenged by Balistrieri, the affidavit contained sufficient information for a finding of probable cause and the proper issuance of the warrant. *Balistrieri* I, at 1206–07. The panel in *Balistrieri* I thus concluded that the challenged statements were immaterial and therefore held that an evidentiary hearing was not required by the Supreme Court's holding in *Franks*. *Id.* We agree and adopt the panel's analysis and holding in *Balistrieri* I regarding this issue.

## V

■ The defendants next make several challenges to the evidence at trial which we will classify as hearsay challenges. First, the defendants claim that it was error to introduce testimony of tape recordings which recited out-of-court statements by co-conspirator Benjamin Ruggiero without a showing of his unavailability. This claim was also raised by defendant Steve DiSalvo in *Balistrieri* I. The panel in *Balistrieri* I held that these statements were admissible under Rule 801(d)(2)(E) of the Federal Rules of Evidence without a showing that Ruggiero was unavailable to testify. *Balistrieri* I, at 1223. This holding follows this circuit's recent decisions in *United States v. Molt*, 758 F.2d 1198, 1199 (7th Cir.1985), and *United States v. Williams*, 737 F.2d 594, 610 (7th Cir.1984). We adopt the analysis and holding of the panel in *Balistrieri* I as to this issue, and therefore reject defendants' claim.

■ The Balistrieris next contend that regardless of Ruggiero's availability or unavailability to testify, any statements that he made before July 29, 1978, cannot be admitted against the Balistrieris because that date is the first time on which the government contends that the Balistrieris entered the conspiracy. This argument misses the mark. It is well-settled that to apply the co-conspirator hearsay exception, the government need only prove "by a preponderance of independent evidence that a conspiracy existed, that both the declarant and the defendant were members of the conspiracy, and that the statements were made during the course and in furtherance of the conspiracy." *United States v. Coe*, 718 F.2d 830, 835 (7th Cir. 1983). We thus do not accept the defendants' arguments that any statement which Ruggiero made before his meeting with Frank Balistrieri on July 29, 1978, was made before the conspiracy began.

First, the conspiracy before that point in time was between SaBella and Ruggiero, and the fact was proven independently by a preponderance of the evidence. *See* Appellee's br. at 59 n. 15. It is also of little moment that SaBella ultimately was acquitted by the jury. Conviction, of course, is governed by the "beyond a reasonable doubt" standard and not the "preponderance of the evidence standard." Second, that the Balistrieris may not have joined the conspiracy until after Ruggiero made the incriminating statements does not make them inadmissible. "Statements made in

furtherance of a conspiracy are admissible against members of the conspiracy who join after the statements were made, provided the conspiracy was in existence when they were made." *United States v. Harris*, 729 F.2d 441, 448 (7th Cir.1984) (citing *United States v. United States Gypsum Co.*, 333 U.S. 364, 393, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948)). We therefore conclude that the tape-recorded conversations with Ruggiero between June 22 and July 29, 1978, and the testimony about those conversations, were fully admissible against the defendants.

■ The defendants next contend that the conspiracy ended on October 2, 1978, when Joseph Balistrieri wrote a letter to Cobb instructing him "to stop conducting any business on behalf of Best until the sensitive areas can be worked out." The district court concluded that the letter was ineffective to establish a withdrawal from the conspiracy. Withdrawal from a conspiracy requires "affirmative steps to withdraw [and not] mere cessation of activity in furtherance of the conspiracy." *United States v. Xheka*, 704 F.2d 974, 986 (7th Cir.1983). We agree with the district court that the letter at best merely suspends the conspiratorial conduct and does not establish a permanent cessation of the conduct.

## VI

Joseph Balistrieri next assigns error to the inclusion of various "other crimes" evidence at trial. This argument has several subparts. First, Balistrieri claims that it was improper to introduce various evidence linking Ruggiero and SaBella to the Bonanno crime family in New York. The government contended that this evidence was admissible as relevant to the conspiracy count in order to define the roles of Ruggiero and SaBella in the conspiracy. The government also claimed that the evidence was relevant under the extortion count to show that Ruggiero was exploiting his position within organized crime to back up his threats against Cobb and to emphasize that Cobb would need Ruggiero's influence with the Balistrieris if Cobb wanted to operate his vending machine business in Milwaukee.

■ On questions of the relevancy of evidence, the district court's assessment of the balance between the probative value and its prejudicial effect is entitled to great deference. *United States v. Levy*, 741 F.2d 915 (7th Cir.1984). We do not believe that the district court's rulings in this case should be disturbed. Although the evidence of Ruggiero's organized crime connections clearly antedated the conspiracy in this case, "[e]vidence of behavior antedating the period covered by the indictment is generally admissible as bearing on the existence and purpose of the conspiracy and the significance of later behavior." *United States v. Partin*, 552 F.2d 621, 634 (5th Cir.1977) (*quoting United States v. Crockett*, 514 F.2d 64, 72 (5th Cir.1975)). Thus Ruggiero and SaBella's New York mob connections are relevant to put the alleged conspiracy between those two into perspective vis-a-vis their relationship with the Balistrieris. Moreover, "organized crime" evidence is often admitted in extortion cases wherein the defendants allegedly exploited their criminal reputations to obtain money or property. *United States v. Russo*, 708 F.2d 209 (6th Cir.1983).

■ Similarly, evidence regarding Frank Balistrieri's gambling conviction in which Balistrieri's relationship with Ruggiero was recounted is relevant in this case to put Balistrieri's relationship with Ruggiero into perspective. *Partin*, 552 F.2d at 634. Finally, the defendants claim prejudice from statements which Cobb made while testifying regarding two alleged murders which could only remotely be considered relevant. The district court sustained the defendants' objections to these comments, ordered the testimony stricken and gave the jury strong, immediate limiting instructions. These instructions were sufficient to cure any potential prejudice from Cobb's statements. *Shotwell Manufacturing Co. v. United States*, 371 U.S. 341, 367, 83 S.Ct. 448, 463, 9 L.Ed.2d 357 (1963).

## VII

 Finally, the Balistrieris challenge the sufficiency of the evidence at trial to sustain the convictions. To reverse a conviction for insufficient evidence, each defendant bears the heavy burden of showing that "the evidence, viewed in the light most favorable to the government, could not have persuaded any rational trier of fact of defendant's guilt beyond a reasonable doubt." *United States v. Perry*, 747 F.2d 1165, 1168 (7th Cir.1984).

. The trial in this case lasted six weeks, during which voluminous evidence was presented by the government and the defendants. It is impossible in the context of this decision to restate all of that evidence and all of the reasonable inferences that can be drawn from that evidence to support the verdicts in this case. Indeed, the parties in their briefs devote over forty pages to the issue of the sufficiency of the evidence. We have examined these arguments carefully and have scrutinized the record in this case and conclude that the defendants' insufficiency arguments must fail.

In the light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), the evidence clearly supports the conclusion that Frank Balistrieri sought to induce Cobb to surrender a financial interest in and control over Best Vending Company, and that he did so by attempting to generate and exploit Cobb's fear of injury to his person and property. The evidence also sustains the conclusion that to this end, Frank Balistrieri acted in concert with Ruggiero, and his sons John and Joseph. As part of this conspiracy, the evidence shows that Frank Balistrieri enlisted the assistance of his sons to provide a legally enforceable basis for his claim over Best Vending. John and Joseph participated in several respects in exploiting Cobb's fear

of Frank Balistrieri and in engaging in extortion of their own right.

For the reasons set forth in this opinion,[3] we affirm the convictions.

AFFIRMED.

SWYGERT, Senior Circuit Judge, concurring.

I concur in the court's disposition of this case, although I disagree with its analysis of the issue of whether the government must make a showing of unavailability before hearsay statements of a coconspirator will be admitted pursuant to Fed.R.Evid. 801(d)(2)(E).

For the reasons set forth in my concurrence in *United States v. Molt*, 772 F.2d 366, 371 (7th Cir.1985), I do not believe that the extra-judicial coconspirator statements of Ruggiero were properly admitted. The government did not demonstrate that Ruggiero was unavailable to testify because his guilty plea negates Ruggiero's right to claim any fifth amendment privileges, and he could be required to testify. *See Reina v. United States*, 364 U.S. 507, 513, 81 S.Ct. 260, 264, 5 L.Ed.2d 249 (1960); *United States v. Heldt*, 668 F.2d 1238, 1253 (D.C.Cir.1981), *cert. denied*, 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 440 (1982); *United States v. Fleming*, 504 F.2d 1045, 1050 (7th Cir.1974). Nonetheless, as I stated in my concurrence in *Molt*, the law of this circuit is clear and I am constrained to follow it; in addition, the defendant can still obtain relief if the Supreme Court affirms *United States v. Inadi*, 748 F.2d 812 (3d Cir.1984), *cert. granted*, —— U.S. ——, 105 S.Ct. 2653, 86 L.Ed.2d 271 (1985).

---

**3.** The defendants also claim error arising from several remarks that the prosecutor made during his closing argument. One remark was made regarding an undercover agent's "experience" in the courtroom and the second concerned the prosecutor's passing reference about

Ruggiero's guilty plea. In the context in which these statements were made and in the context of the entire record of this six-week trial, these statements were too insignificant to have prejudiced the defendants.