**UNITED STATES of America, Plaintiff,**

v.

**Ronald IGNOFFO, et al., Defendants.**

**No. 84 CR 507.**

United States District Court,
N.D. Illinois, E.D.

Jan. 11, 1985.

Judith Dobkin, John Scully, Sp. Attys., U.S. Dept. of Justice, Chicago, Ill., for plaintiff.

Elliot Samuels, George P. Lynch, Chicago, Ill., Joseph M. Laraia, Wheaton, Ill., for defendants.

## DETENTION ORDER

SHADUR, District Judge.

On January 9, 1985 following a jury trial, Ronald Ignoffo ("Ignoffo") was convicted on all counts in the indictment in which he was named in this case. On January 10 the government moved for Ignoffo's detention pursuant to the Bail Reform Act of 1984 (the "Act"), 18 U.S.C. § 3143(a),[1] claiming Ignoffo was likely to pose a danger to the safety of other persons or the community if released pursuant to Act §§ 3142(b) or (c). This Court immediately conducted a detention hearing (the "Hearing") on January 10 and 11. Based on the evidence presented at the Hearing this Court makes the following findings of fact ("Findings"):

1. FBI Agent Scott Jennings ("Jennings") testified as to information he had obtained from Timothy Joyce a/k/a Timo-thy O'Malley ("Joyce") during the course of a 1981 interview, in which Joyce had told Jennings Victor Arrigo ("Arrigo") had borrowed Joyce's automobile some six months earlier and then failed to return it. On the day after he borrowed the car, Arrigo had assertedly told Joyce he had committed the gangland-type shooting assassination of John DeJohn ("DeJohn") in Joyce's automobile and had been accompanied by Ignoffo during the killing.[2] According to Arrigo the assassination had been ordered by "Caesar."[3] This Court finds the evidence described in this Finding 1 credible.

2. During the trial, immunized witness Eileen Colgan ("Colgan") provided testimony that, from implications reasonably drawn from the jury's questions to this Court while they were conducting their deliberations before verdict, appears to have been highly significant to that verdict. Among more than 60 trial witnesses, only Colgan was able to provide *direct* evidence that linked as many as four persons (Ignoffo and three others) to a single overall gambling business and a conspiracy to conduct such a business. For conviction under Count Two of the indictment, a minimum of five persons must have been found by the jury to have engaged in such a business (and the conspiracy conviction under Count One correspondingly had the same five-person requirement). In fact the jury found guilty of the charges under both those Counts four of the defendants: the three defendants identified by Colgan (Ignoffo,

1. All later citations to the Act in this order will also refer to the section numbering in Title 18 rather than to the internal section numbering of the Comprehensive Crime Control Act of 1984, of which the Act is a part.

2. Under the circumstances and given the substantive nature of the evidence to the effect stated in the text, the testimony was necessarily hearsay. Although Act § 3143(a) contains no specification of procedures, its language ("unless the judicial officer finds by clear and convincing evidence...") necessarily implies a hearing, and this Court concludes the procedural provisions of the last five sentences (except the penultimate sentence) of Act § 3142(f) apply to such a hearing, including the provision that:

The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing.

3. Other evidence during the trial and during the Hearing indicates "Caesar" is codefendant Joseph DiVarco ("DiVarco"), with whom Ignoffo was associated by extensive trial testimony. Testimony by Jennings also associated Arrigo and DiVarco (based on Arrigo's asserted statements and on Joyce's own stated observations). This Court finds the "Caesar" referred to in the statement to which Jennings testified was in fact DiVarco.

Marshall Portnoy and Warren Winkler)[4] and DiVarco. Before her testimony Colgan had expressed real fear of Ignoffo, about whom she said (outside the presence of the jury):

> Ms. Colgan: I grew up with Ron Ignoffo and watched him break people's faces, and I know the man.
>
> \*  \*  \*  \*  \*  \*
>
> Mr. Werksman: Break their faces?
> Ms. Colgan: Yes, literally.

3. At the Hearing Ignoffo said he was not involved in the DeJohn shooting and offered the testimony of a number of character witnesses (his sister, her daughter and five persons acquainted with him for varying periods of time). All those witnesses characterized Ignoffo as non-violent. However not one of the acquaintances was aware of the several arrests shown on Ignoffo's "rap sheet" (several of which involved charges of battery),[5] nor did any of them know any of a series of individuals about whom the prosecutor asked—individuals with whom Ignoffo was associated in his gambling activities or the individuals referred to in Finding 1.

Based on the facts presented to this Court at the Hearing and reflected in the Findings, this Court finds and concludes:

1. Ignoffo has been found guilty of a number of offenses and is now awaiting sentence. Accordingly Act § 3143(a) is applicable to him.

2. On the weight of the evidence produced against Ignoffo as described in Finding 1 (evidence that has been credited by this Court), coupled with the sincere and legitimate fears expressed by Colgan as described in Finding 2, all of which are contrasted with the makeweight nature of the evidence produced by Ignoffo as described in Finding 3,[6] this Court cannot find there is clear and convincing evidence Ignoffo is not likely to pose a danger to the safety of any other person or the community if released pursuant to Act § 3142(b) or (c).

It is therefore ordered that Ignoffo is committed to the custody of the Attorney General for confinement at the Chicago Metropolitan Correctional Center pending imposition of sentence. This Court reserves judgment on the motion by Ignoffo's counsel challenging the constitutionality of Act § 3143(a), both on its face and as applied to Ignoffo, pending submission by both sides' counsel of legal authorities on that subject.

---

4. Joseph Zucchero, the fourth person identified by Colgan (at the time to which she testified at trial Colgan was living with Zucchero), died in an automobile accident before the indictment in this case was returned. Clearly if the jury credited Colgan's testimony, Zucchero could have been considered by the jury to have been the fifth person engaged in the gambling business and the conspiracy.

5. This Court does not of course treat such arrests as evidence of the substantive offenses charged against Ignoffo (who has no record of criminal convictions for any crimes of vio-

lence). Rather the questions were permitted on cross-examination under Fed.R.Evid. 405(a) to test the witness' knowledge—or as it demonstrated, their lack of knowledge—on which their opinions as to Ignoffo were based.

6. None of the witnesses called by Ignoffo (apart from his sister and niece, whose interest and bias were obvious and understandable) was really in a position to address the currently relevant issues in an informed way. This Court does not discredit their testimony, but simply finds it wholly nonpersuasive.