**UNITED STATES of America, Plaintiff,**

v.

**Joseph DiVARCO, et al., Defendants.**

**No. 84 CR 507.**

United States District Court,
N.D. Illinois, E.D.

Feb. 6, 1985.

---

Judith Dobkin, John Scully, Sp. Attys., U.S. Dept. of Justice, Chicago, Ill., for plaintiff.

Elliot Samuels, George P. Lynch, Chicago, Ill., Joseph M. Laraia, Wheaton, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

On January 9, 1985 each of Joseph Di-Varco ("DiVarco") and Ronald Ignoffo ("Ignoffo") was convicted by a jury on all counts in which he was named in the indictment in this case. On January 10 the government moved for the detention of each of them pursuant to the Bail Reform Act of 1984 (the "Act"), 18 U.S.C. § 3143(a) ("Section 3143(a)"),[1] claiming each of them (though not any of their four convicted codefendants) was likely to pose a danger to the safety of other persons or the community if released pursuant to Sections 3142(b) or (c).

---

[1] All other citations to Title 18 (as amended by the Act) will also simply take the form "Section —." Citations to the Act's internal numbering will take the form "Act §—."

This Court immediately conducted a detention hearing (the "Hearing") on January 10 and 11. At the conclusion of the Hearing as to Ignoffo, this Court found he had not shown by clear and convincing evidence that he was not likely to pose such a danger. Accordingly Ignoffo was ordered detained in accordance with Section 3143(a).[2] DiVarco's hearing was not concluded because his doctors recommended he be hospitalized.[3] However, given the testimony to this point (implicating DiVarco not only in the gangland-type assassination tied to Ignoffo, see Ex. 1 Finding 1, but also to the botched assassination of Ken Eto, a witness in the trial of this case), this Court ordered DiVarco committed to the custody of the Attorney General for confinement at Bethany Methodist Hospital pending imposition of sentence (subject, of course, to a possibly different resolution if the Hearing were completed before that time).[4]

Both DiVarco and Ignoffo have now moved for release from detention, launching a number of constitutional attacks on Section 3143(a). For the reasons stated in this memorandum opinion and order, their motions are denied.

### Changed Standards Under the Act

Two of this Court's colleagues have recently dealt with the constitutionality of other bail provisions of the Act: Judge Hart in *United States v. Hazzard*, 598 F.Supp. 1442 (N.D.Ill.1984) (pretrial detention) and Judge Getzendanner in *United States v. Cirrincione*, 600 F.Supp. 1436 (N.D.Ill.1985) (detention after sentencing and pending appeal, based on the likelihood of reversal on appeal). Though the constitutional considerations in those situations are obviously related to the considerations applicable to the present question, the distinctions among the several situations make neither of the earlier analyses controlling here.

Here we deal with already-convicted but not-yet-sentenced defendants, as to each of whom the decision of detention or release is based on whether he "is not likely to ... pose a danger to the safety of any other person or the community if released" (Section 3143(a)). Just such a likelihood of danger was an established basis for denying bail under *former* law, 18 U.S.C. § 3148 (repealed by Act § 203(a)):

> A person ... who has been convicted of an offense and is either awaiting sentence or sentence review under section 3576 of this title or has filed an appeal or a petition for a writ of certiorari, shall be treated in accordance with the provisions of section 3146 [establishing conditions of release] unless the court or judge has reason to believe that no one or more conditions of release will reasonably assure that the person will not flee or pose a danger to any other person or to the community. If such a risk of flight or danger is believed to exist ... the person may be ordered detained.

Pre-Act law also imposed the burden of establishing the absence of such danger on the convicted defendant—at least one who has already been sentenced. Although early case law under 18 U.S.C. § 3148 had treated its language as continuing to create the historial presumption *against* detention

---

**2.** Exhibit 1 to this memorandum opinion and order is this Court's order of detention as to Ignoffo.

**3.** At that time DiVarco's doctors considered him an imminent pneumonia risk, in addition to his having an irregular heartbeat pattern and other problems. After his hospitalization they recommended installation of a pacemaker, which has since been done. DiVarco is now recuperating from that operation and should be capable of discharge from the hospital shortly, though a later hearing on that subject has disclosed further complications in his physical condition.

**4.** Exhibit 2 to this memorandum opinion and order is this Court's order of detention as to DiVarco.

(*United States v. Provenzano*, 605 F.2d 85, 94 (3d Cir.1979)), in 1972 Fed.R.App. ("Rule") 9(c) was adopted expressly (1972 Advisory Committee Notes to that Rule):

> to allocate to the defendant the burden of establishing that he will not flee and that he poses no danger to any other person or to the community. The burden is placed upon the defendant in the view that the fact of his conviction justifies retention in custody in situations where doubt exists as to whether he can be safely released pending disposition of his appeal.

See discussion in *Provenzano*, 605 F.2d at 93–95.

Thus the allocation of proof as to the dangerous *post*-sentence defendant is clear. But this Court has not located any case, either under prior law or under the Act, dealing with the burden-of-proof question in the post-conviction *pre*-sentence situation such as DiVarco's or Ignoffo's. It would surely seem, however, that Congress might reasonably have viewed the single fact of conviction (as opposed to the precise timing of a detention decision—whether pre-sentence or post-sentence) as determinative, so as to equate the burden of proof in any post-conviction situation to that de-

fined in Rule 9(c) (see the later discussion of this subject). In any event, the Act has now changed the burden on the convicted defendant (both pre-sentence and post-sentence) to one of "clear and convincing evidence." [5]

### Constitutional Considerations [6]

#### 1. Eighth Amendment

At the outset it should be made clear the "right to bail" here—at least in terms of a literal constitutional right—is plainly a misnomer. What the Eighth Amendment says on the subject is simply this:

> Excessive bail shall not be required....

In *Carlson v. Landon*, 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 (1952) the Supreme Court rejected (albeit in dictum) the notion that because excessive bail cannot be set, the outright denial of bail must a fortiori be foreclosed. Instead the Eighth Amendment was there taken to mean that *if* an individual is found entitled to bail at all, the right created by that determination cannot be subverted by an unreasonably high bail setting (*id.* at 545, 72 S.Ct. at 536):

> The [Eighth Amendment's] bail clause was lifted with slight changes from the English Bill of Rights Act. In England

---

**5.** Thus the shift from old 18 U.S.C. § 3148 and Rule 9(c) to Section 3143(a) involves two changes:

> 1. from "the judge has reason to believe that no ... conditions of release will reasonably assure that the person will not ... pose a danger...." to "the judicial officer finds ... that the person is not likely to ... pose a danger...."; and
> 2. from "the burden of establishing ... rests with the defendant" to "the judicial officer finds by clear and convincing evidence...."

It is always difficult to convert the semantics of such differently stated standards into a quantified comparison. Here the "reason to believe" test in the first pairing might arguably be viewed as harder for a defendant to overcome than its "finds not likely" counterpart. Conversely "clear and convincing" is plainly a more difficult burden for the defendant than a mere

preponderance. Thus (with factors that might be perceived as pointing in different directions) the overall effect of the changes is not as obvious as it might seem at first blush. For purposes of this opinion, however, it will be assumed a defendant is worse off under the Act than under the old law.

**6.** All the detention provisions of the Act have been drawn from the corresponding provisions of the District of Columbia Code (Sections 23–1321 to 23–1327), where they have been in effect since enactment of the District of Columbia Court Reform and Criminal Procedure Act of 1970. Section 3143(a) is a counterpart of D.C. Code § 23–1325(b). In *United States v. Edwards*, 430 A.2d 1321 (D.C.1981) (en banc) the District of Columbia Court of Appeals dealt with the constitutionality of various of those provisions in an extended opinion (with some dissents on different issues).

that clause has never been thought to accord a right to bail in all cases, but merely to provide that bail shall not be excessive in those cases where it is proper to grant bail. When this clause was carried over into our Bill of Rights, nothing was said that indicated any different concept. The Eighth Amendment has not prevented Congress from defining the classes of cases in which bail shall be allowed in this country.

There is room for debate on that score in the pre-conviction context, fueled in part by a dictum in *Stack v. Boyle*, 342 U.S. 1, 4, 72 S.Ct. 1, 3, 96 L.Ed. 1 (1951) (decided the same term as *Carlson*) (emphasis in original):

> From the passage of the Judiciary Act of 1789, 1 Stat. 73, 91, to the present Federal Rules of Criminal Procedure, Rule 46(a)(1), federal law has unequivocally provided that a person arrested for a non-capital offense *shall* be admitted to bail. This traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction. See *Hudson v. Parker*, 156 U.S. 277, 285 [15 S.Ct. 450, 453, 39 L.Ed. 424] (1895). Unless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning.

For an extended discussion of the issues in this area, see *United States v. Edwards*, 430 A.2d 1321, 1325–31 (D.C.1981) (en banc).

But even the *Stack* dictum addresses the *pre*-conviction, not *post*-conviction, defendant. As for the latter category of offender Justice Douglas, scarcely a foe of civil liberties, spoke to the issue in his capacity as Circuit Justice in *Carbo v. United States*, 82 S.Ct. 662, 666, 7 L.Ed.2d 769 (1962):

> If, for example, the safety of the community would be jeopardized, it would be irresponsible judicial action to grant bail.

Accord, *Harris v. United States*, 404 U.S. 1232, 1235–36, 92 S.Ct. 10, 13–14, 30 L.Ed.2d 25 (1971) (Douglas, J., Circuit Justice); and see *Russell v. United States*, 402 F.2d 185, 187 (D.C.Cir.1968):

> Appellants will remain in custody not because they lack the means to make bail, but for the reason that their release would present danger to the community.

But see *Sellers v. United States*, 89 S.Ct. 36, 38, 21 L.Ed.2d 64 (1968) (Black, J., Circuit Justice) (questioning whether a defendant's dangerousness can ever justify denial of bail).

■ This Court therefore rejects, as to convicted defendants DiVarco and Ignoffo, the unconstitutionality of Section 3143(a) on Eighth Amendment grounds.[7] If defendants are to find relief, it must be elsewhere in the Constitution.

### 2. *Due Process Clause*

Both DiVarco and Ignoffo advance a potpourri of challenges to the procedure under the Act. None is persuasive, and none calls for more than brief discussion.[8]

---

**7.** There are cases that express some doubt on this score; see, e.g., *Hunt v. Roth*, 648 F.2d 1148, 1158–62 (8th Cir.1981). But they do so on the theory that a wholly arbitrary denial of bail is the functional equivalent of "excessive bail," thus violating the Eighth Amendment. Even on that view, Congress' decision that a defendant's danger to society should foreclose his release can hardly be viewed as establishing a wholly arbitrary classification. Thus the conclusion

reached in the text would not be altered by a different perception of the Eighth Amendment.

**8.** True enough, just last year the Supreme Court said in *Schall v. Martin*, — U.S. —, 104 S.Ct. 2403, 2410, 81 L.Ed.2d 207 (1984):

> In *Bell v. Wolfish*, 441 U.S. [520], at 534 n. 15, 99 S.Ct. [1861], at 1871 n. 15 [60 L.Ed.2d 447 (1979)], we left open the question whether

■ Though they call on such pejorative rubrics as vagueness and lack of standards, DiVarco and Ignoffo attack Section 3143 in both procedural and substantive due process terms. It is true the statute does not specifically prescribe the procedures to be followed. But its requirement of a judicial officer's "find[ing] by clear and convincing evidence" necessarily connotes a hearing, and the clear implication of the statute is that the neighboring provisions of Sections 3142(f) (dealing with hearings for presentence detention) and 3142(g) (specifying the factors to be considered in such hearings, including safety or danger to other persons and the community) apply to Section 3143(a) as well.[9] This Court in fact conducted just such a hearing. In that light the DiVarco-Ignoffo arguments evanesce:

1. Any claim that it is not clear to whom the statute applies is absurd: It is *potentially* applicable to any convicted defendant, and it is *actually* applied against any such person about whom the government has information that he or she poses a potential danger to other persons or the community. That triggers the need for a judicial determination of the issue, and hence a hearing.

2. By its very nature, such "danger" can take a number of forms. Nothing requires Congress to substitute the par-

ticular for the generic—to give the term more precise content by giving examples or by establishing a laundry list. Certainly DiVarco and Ignoffo, tied by testimony to gangland-type assassinations (and with their potential for retaliation against witnesses here), cannot claim the concept of danger to others or the community is devoid of content in their cases. That would follow a fortiori from such cases as *Provenzano*, 605 F.2d at 95–96. And as to what constitutes a "sufficient showing" of the likelihood of such danger, that is no different from any other factual determination courts are regularly called upon to make.

3. By imposing the burden of going forward at the Hearing on the government and by according to each defendant and his counsel as much time as they found necessary to deal with the government's charges, this Court assured both adequate notice of the allegations against the defendants and ample opportunity for a meaningful defense. *Edwards*, 430 A.2d at 1339–41.

4. Even in full-blown criminal trials, the Sixth Amendment's Confrontation Clause poses the only *constitutional* objection to hearsay evidence. And it has always been true of bail hearings, including those resulting in detention, that the rules of evidence do not limit the conduct

any governmental objective other than ensuring a detainee's presence at trial may constitutionally justify pretrial detention. But *Schall* itself upheld in due process terms (at least as to juveniles) a system of pretrial detention predicated on "the combined interest in protecting both the community and the juvenile himself from the consequences of future criminal conduct...." When the detained person has already been tried and found guilty of another crime (as have DiVarco and Ignoffo), the powerful consideration of the presumption of innocence (which undergirds all our concerns about pretrial detention, viewed as punishment, see *Stack*, 342 U.S. at 4, 72 S.Ct. at 3) loses its force. It would be a mistake to carry over to the present situation, in undiluted form, the troubled judicial soul-searching about pretrial

detention—a soul-searching that has expressed itself in a continuing due process dialogue (contrast, for example, the majority and dissenting opinions in both *Schall* and *Bell*).

**9.** Among other things, Section 3143(a) says a finding of no danger results in a release order under Section 3142(b) or (c). Section 3142(f) provides for the "detention hearing" to see which if any conditions under one of those very sections—Section 3142(c)—should apply. Section 3142(g) speaks of the factors to be considered at such a hearing. That statutory structure of course creates a common-sense link between the Section 3143(a) requirement of a finding, on the one hand, and the Section 3142(f) hearing procedures and the Section 3142(g) factors, on the other.

of the hearing. Hearsay may be considered, with the judge applying his or her experience as a factfinder to decide the extent to which it is to be credited or discredited because of insufficient reliability. In fact the catchall provision of Fed.R.Evid. 803(24) and 804(b)(5) (which some thoughtful academicians and courts have suggested ought to supplant entirely the particularized exceptions to the hearsay rule) permit essentially that result even in the more formal environment of a trial. On this issue generally, see *Edwards*, 430 A.2d at 1337–38.

5. Burden of proof allocations do not necessarily implicate due process requirements. This opinion has already pointed out that prior law imposed on the defendant the burden of proof (at least in the post-conviction, post-sentencing situation) of negating his or her likely danger to other persons or the community where that was placed in issue. And so long as the issue is one of likelihood of danger, it appears rational for Congress to have equated the convicted felon *before* sentencing with the same convicted felon *after* sentencing for the purpose of protecting society against the dangers he or she presents. In turn, that equal need for protection carries with it the rationality of the congressional decision that the burden of proof in the two situations should be exactly the same. Once that determination is made, the use of a "clear and convincing" rather than a preponderance test does not appear to cross the borderline into a due process no-man's land.[10]

### 3. *Equal Protection Clause*

Ignoffo suggests Section 3143's failure to distinguish between those who plead

guilty and those convicted after trial, between those convicted of misdemeanors and those convicted of felonies, and between those convicted of nonviolent and those convicted of violent offenses raises equal protection problems. DiVarco puts related issues in a different way: Section 3143's presumption against *all* convicted defendants—regardless of their offenses or backgrounds—bears no rational relationship to legitimate governmental interests of protecting the community (including other persons).

Of course the distinctions between offenders made by Ignoffo cut against rather than for him, except the comparison based on the nonviolent nature of the offenses of which he has been convicted. That fact—that he is on the wrong side of two of the three comparisons—creates standing questions as to his ability to raise such other claims. But even apart from that, what both Ignoffo and DiVarco gloss over is that the *occasion* for this Court's present determination is not the offense leading to the conviction but the post-conviction threat to safety posed by the defendant.[11] *That* is the class Congress has defined—all convicted defendants who represent such a societal threat—and *that* class bears the most direct imaginable nexus to the remedy: detention pending sentencing. There can be no quarrel with the rationality of that classification for Equal Protection Clause purposes.[12]

### 4. *Effective Assistance of Counsel*

DiVarco says detention pending sentencing effectively negates his right to appeal, and both DiVarco and Ignoffo assert

---

**10.** Candor compels the disclosure that this Court has found no case law (nor have the parties cited any) on this subject.

**11.** This distinction is touched on more fully in the ex post facto discussion later in this opinion.

**12.** That rational distinction also demolishes DiVarco's suggestion of discriminatory enforcement based on the government's having sought detention of DiVarco and Ignoffo but not of their four codefendants (as to whom the government said it had no information indicating danger to other persons or to the community).

Section 3143's alleged procedural flaws preclude any meaningful defense. Both those arguments are essentially Sixth Amendment right-to-counsel claims, and simply to state them is to disclose their total lack of merit. It is clearly possible for a court to structure the conditions of presentence detention so as to preserve those rights to a defendant.

### 5. Ex Post Facto Clause

Up to this point DiVarco and Ignoffo have struck out on all the grounds they assert. That leaves for consideration only the ex post facto question—a question that (given Judge Getzendanner's opinion invalidating a related provision of the Act on that score) bears careful scrutiny.

Because this Court is not called upon to decide the same issues as Judge Getzendanner or Judge Hart, and because orderly jurisprudence dictates the non-decision of constitutional questions until they must be resolved in the crucible of a live controversy (see *Ashwander v. TVA*, 297 U.S. 288, 346–47, 56 S.Ct. 466, 482–83, 80 L.Ed. 688 (1936) (Brandeis, J., concurring)), nothing in this opinion should be construed as either subscribing to or disavowing either *Cirrincione* or *Hazzard*. But as both the extended analysis in *Cirrincione* and the shorter treatment in *Hazzard* reflect, the key to ex post facto vulnerability vel non in this case is whether, in the words of the most recent Supreme Court pronouncement on the clause, *Weaver v. Graham*, 450 U.S. 24, 30, 101 S.Ct. 960, 965, 67 L.Ed.2d 17 (1981), a defendant's *punishment* has been increased by the new law:

> The presence or absence of an affirmative, enforceable right is not relevant,

however, to the *ex post facto* prohibition, which forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred. Critical to relief under the *Ex Post Facto* Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated.[13]

It is true *Weaver, id.* at 29, 101 S.Ct. at 964 also speaks in terms of the challenged law "disadvantag[ing] the offender affected by it." But that characterization alone is oversimplistic, for the Supreme Court itself has consistently taught not every "disadvantage" is vulnerable under the Clause, and the core inquiry remains the retroactive increase in *punishment*. As *DeVeau v. Braisted*, 363 U.S. 144, 160, 80 S.Ct. 1146, 1155, 4 L.Ed.2d 1109 (1960) put it:

> The mark of an *ex post facto* law is the imposition of what can fairly be designated punishment for past acts. The question in each case where unpleasant consequences are brought to bear upon an individual for prior conduct, is whether the legislative aim was to punish that individual for past activity, or whether the restriction of the individual comes about as a relevant incident to a regulation of a present situation....

Just last Term the Supreme Court held pretrial detention to protect society from the potential consequences of predictable criminal acts was *not* punishment. *Schall v. Martin*, 104 S.Ct. at 2412–13 (1984).[14]

---

**13.** Other facets of Ex Post Facto Clause coverage, such as its prohibition of (1) retrospective changes in conduct giving rise to criminal penalties and (2) the elimination of defenses available when the crime was committed, are plainly not in issue here.

**14.** *Schall* and a number of the other cases discussed in the text discuss the concept of "punishment" for due process (rather than ex post facto) purposes. Because there seems no logical reason the "punishment" concept should be given any different content in construing the

Though that decision was rendered in the context of juveniles (with their special rights and disabilities), the same punishment v. non-punishment analysis was announced as to adult pretrial detainees five years earlier in *Bell v. Wolfish,* 441 U.S. 520, 535, 537, 538, 99 S.Ct. 1861, 1871, 1873, 1874, 60 L.Ed.2d 447 (1979) (citations omitted):

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee. For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law.

> \* \* \* \* \* \*

Not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense, however. Once the Government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention. Traditionally, this has meant confinement in a facility which, no matter how modern or how antiquated, results in restricting the movement of a detainee in a manner in which he would not be restricted if he simply were free to walk the streets pending trial. Whether it be called a jail, a prison, or a custodial center, the purpose of the facility is to detain. Loss of freedom of choice and privacy are inherent incidents of confinement in such a facility. And the fact that such detention interferes with the detainee's under-

standable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into "punishment."

This Court has recognized a distinction between punitive measures that may not constitutionally be imposed prior to a determination of guilt and regulatory restraints that may.

\* \* \* \* \* \*

A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.... Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]."

What is at work under Section 3143 is not punishment for *past* conduct but the protection of society generally, and its individual members particularly, from reasonably predictable *future* conduct. *Schall,* 104 S.Ct. at 2417–18 (citations omitted) said:

> Our cases indicate, however, that from a legal point of view there is nothing inherently unattainable about a prediction of future criminal conduct. Such a judgment forms an important element in many decisions, and we have specifically rejected the contention, based on the same sort of sociological data relied upon by appellees and the district court, "that it is impossible to predict future behavior

---

two constitutional provisions, this Court has felt free to draw on the due process cases in this Ex

Post Facto Clause discussion.

and that the question is so vague as to be meaningless."

That calls into play the concept our Court of Appeals applied to the Ex Post Facto Clause (albeit in a different context from the present one) in *United States v. Sutton*, 521 F.2d 1385, 1390–91 (7th Cir.1975) (quoting *United States v. Karnes*, 437 F.2d 284, 289–90 (9th Cir.), *cert. denied*, 402 U.S. 1008, 91 S.Ct. 2189, 29 L.Ed.2d 430 (1971)):

> It is well established "that where Congress has rationally concluded that persons who have demonstrated a tendency in the past to engage in conduct that Congress has the power to proscribe, Congress may restrict such future activities without violating the Ex Post Facto prohibition."

 Again the result here is foreordained by the like conclusions as to pretrial detention. In the pretrial situation the mere probable cause to believe commission of a crime, coupled with a perceived threat of the defendant to the safety of others, has rendered the detention order something other than "punishment." Absent punishment there is no ex post facto problem. Here, by comparison, a jury has already found beyond a reasonable doubt that DiVarco and Ignoffo have committed crimes. Surely society cannot be *less* entitled to protect itself and its members against what this Court has found the likelihood of real dangers—dangers that would be posed by the continued enlargement of convicted defendants Ignoffo and DiVarco[15] pending their sentencing.

### Conclusion

Section 3143 is not vulnerable to constitutional onslaught, either on its face or as applied to DiVarco and Ignoffo.[16] Both their motions for release on bail pending sentencing are denied.

### Exhibit 1

Reprinted at 602 F.Supp. 1027

---

**15.** This does not of course imply an ultimate finding as to DiVarco. Because the statute places the burden on him, and because the evidence during the Hearing to this point demonstrates a real probability of his posing a danger to the safety of others, his release pending completion of the Hearing would be improper.

**16.** After this opinion was completed (and indeed signed and ready for issuance), this Court learned of the very recent decisions by three Courts of Appeal reaching a result opposite to that of Judge Getzendanner's *Cirrincione* opinion in the post-appeal situation covered by Section 3143(b). *United States v. Miller*, 753 F.2d 19 (3d Cir.1985); *United States v. Powell* and other consolidated cases (8th Cir.) (order issued; opinion to follow); *United States v. Affleck*, No. 84–2630 (10th Cir.) (same). In addition, on January 26 our own Court of Appeals entered an unpublished order (non-citeable and non-precedential under Circuit Rule 35) affirming Judge Kanne's decision rejecting ex post facto attack in *United States v. Molte*, HCR 83–36–33 (N.D.Ind. Jan. 9, 1985). In accordance with the *Ashwander* principles referred to earlier in the text, this Court of course continues to express no opinion on the substantive issue posed by those cases. It has however obtained a copy of the one available opinion—*Miller*—to determine how if at all that opinion may be useful here. As to that:

 1. *Miller,* at 21 gives very short shrift to the ex post facto issue, simply declaring the "availability *vel non* of bail pending appeal, albeit extremely important to the individual involved, is a procedural issue rather than a type of punishment to which the Ex Post Facto Clauses apply."

 2. None of the other constitutional issues raised by DiVarco or Ignoffo here was discussed in *Miller.*

Suffice it to say that (not surprisingly, given the Court of Appeals' ruling) nothing in *Miller* points to a different result in this case. Nor does it appear any more likely that any of the other cases cited in this footnote would do so.

Exhibit 2

UNITED STATES OF
AMERICA, Plaintiff,

v.

JOSEPH DiVARCO, et al., Defendants.
No. 84 CR 507

## DETENTION ORDER

On January 9, 1985 following a jury trial, Joseph DiVarco ("DiVarco") was convicted on all counts in the indictment in which he was named in this case. On January 10 the government moved for DiVarco's detention pursuant to 18 U.S.C. § 3143(a). This Court immediately commenced a detention hearing (see 18 U.S.C. § [3142](f)), found that the government had presented credible evidence that established prima facie (though this Court has not at this time definitively found) that DiVarco was likely to pose a danger to the safety of other persons or the community if released pursuant to 18 U.S.C. §§ 3142(b) or (c) and that DiVarco had not yet established by clear and convincing evidence that he was not likely to pose such danger, and therefore ordered DiVarco detained pending completion of the hearing. Such completion of the hearing was not feasible at that time, in part because DiVarco's counsel advised that DiVarco's doctors had directed his hospitalization to avoid the possibility of his contracting pneumonia.

In accordance with 18 U.S.C. § 3143(a) this Court hereby orders that DiVarco be committed to the custody of the Attorney General for confinement at Bethany Methodist Hospital pending imposition of sentence, upon the following conditions:

1. DiVarco shall be allowed monitored visits from his immediate family (his wife, their children and their children's spouses). All such visits are to be prearranged through the United States Marshal's Service.

2. DiVarco's attorneys (George Lynch, Joseph Laraia and Jacqueline Walther) and his doctors shall have unlimited, unmonitored access to him.

3. United States Probation Officer Rhoda Michaels shall have unmonitored access to DiVarco by prearranged appointment.

4. DiVarco shall be provided telephone access to his immediate family (see Paragraph 1) if such access can be secured through the United States Marshal's Service. Such access shall not include a direct dial telephone.

5. No access shall be provided the United States Marshal's Service to DiVarco's medical records, nor shall any Marshal discuss DiVarco's medical condition with hospital personnel.

/s/ Milton I. Shadur
Milton I. Shadur
United States District Judge

Date: January 11, 1985