**UNITED STATES of America**

v.

**Biagio CIRRINCIONE and Tom Cirrincione, et al.**

**No. 82 CR 778.**

United States District Court,
N.D. Illinois, E.D.

Jan. 16, 1985.

Joseph Hartzler, David Stetler, Asst. U.S. Attys., Chicago, Ill., for plaintiff.

Edward M. Genson, Jeffrey B. Steinback, Thomas A. Corfman, Genson & Steinback, Chicago, Ill., for defendant Tom Cirrincione.

Patrick Tuite, David Mejia, Patrick A. Tuite, Ltd., Chicago, Ill., for defendant Biagio Cirrincione.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

This case is before the court on the motions for release on bond pending appeal of defendants Biagio Cirrincione and Tom Cirrincione. On August 8, 1984, after a jury trial, defendants were found guilty of violations of federal law in connection with the bombing of certain restaurants. On October 18, 1984, the court denied both defendants' motions for new trial and for judgment of acquittal, and sentenced them to periods of incarceration. Both have filed Notices of Appeal, and now move the court for release on bond pending appeal. Defendants contend that they meet the standards for release under 18 U.S.C. § 3143 of the Bail Reform Act of 1984. Alternatively, defendants have argued that application

of the Bail Reform Act to them would violate the ex post facto clause, Article I, § 9 of the Constitution.

### Standards Governing Bond Pending Appeal

▪ On October 12, 1984, the President signed into law the continuing appropriations resolution, Public Law No. 98–473, 98 Stat. 1837. Title II of that Public Law is the Comprehensive Crime Control Act of 1984, Chapter I of which contains substantial revisions of the law governing bond pending appeal. *See* Bail Reform Act of 1984, §§ 202–210 (codified at 18 U.S.C. §§ 3141–3150, 3041–3043, 3062) (the "Act"). As the Act contains no effective date, it is clear that it became effective on October 12, 1984, the date of enactment. *United States v. Gavrilovic*, 551 F.2d 1099, 1103 (8th Cir.1977) (citing *Arnold v. United States*, 13 U.S. (9 Cranch) 103, 119 (1815)). *See* U.S. Department of Justice, *Handbook on the Comprehensive Crime Control Act of 1984 and Other Criminal Statutes Enacted by the 98th Congress*, at 27 (Dec. 1984).

The new standards governing bond pending appeal provide that in a case such as this, bond shall be denied unless the court finds:

(1) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released ...; and

(2) that the appeal is not for purpose of delay and raises a substantial question of law or fact likely to result in reversal or an order for a new trial.

18 U.S.C. § 3143(b). This substantially changes the standards governing bond pending appeal. Before the Act became effective, bond pending appeal could be denied in this case only if "a risk of flight or danger [to any other person or to the community] is believed to exist, or if it appears that an appeal is frivolous or taken for delay...." 18 U.S.C. § 3148, *repealed by* Bail Reform Act of 1984, § 203(a). In addition, while the burden of establishing that the defendant will not flee or pose a danger to another person or the community rested with the defendant, Fed.R.App.P.

9(c), *amended by* Bail Reform Act of 1984, § 210, the burden of establishing that the appeal was frivolous or taken for delay rested with the government. *Id.* at advisory committee note.

▪ The new standards for bond pending appeal substantially increase the Cirriciones' burden on this motion. First, amended Appellate Rule 9(c) provides that the defendants carry the burden of establishing, by clear and convincing evidence, both elements of § 3143(b). Second, § 3143(b)(2) requires them to show that their appeal raises a "substantial question of law or fact likely to result in reversal." This is a more stringent test than the previous "frivolous" standard. The legislative history makes clear that the change in wording represents an intentional change in the standard. A Senate Report gives this description of a predecessor to § 3143(b):

Subsection (b) deals with release after sentence of a defendant who has filed an appeal or a petition for a writ of certiorari. Such a person is ... to be detained unless the judicial officer finds by clear and convincing evidence that the defendant is not likely to flee or pose a danger to the safety of any other person or the community. In addition, the court must affirmatively find that the appeal is not taken for the purpose of delay and that it raises a substantial question of law or fact likely to result in reversal or an order for a new trial. This is a further restriction on post-conviction release. Under the current 18 U.S.C. § 1348, release can be denied if it appears that the appeal is frivolous or taken for delay. The change in subsection (b) requires an affirmative finding that the chance of reversal is substantial. This gives recognition to the basic principle that a conviction is presumed to be correct.

S.Rep. No. 97–317, at 57, 97th Cong., 2d Sess. (1982) (concerning S. 1554); *see also* S.Rep. No. 98–147, at 52–54, 98th Cong., 1st Sess. (1983) (concerning S. 215). The United States Department of Justice, quoting the Senate Report, has also interpreted this change as requiring "[a]n affirmative

finding ... that the chance for a reversal is substantial." U.S. Department of Justice, *Handbook on the Comprehensive Crime Control Act of 1984 and Other Criminal Statutes Enacted by the 98th Congress,* at 10.

The defendants argue that the Act requires nothing more than a nonfrivolous issue on appeal which, if successful, would result in a reversal or an order for a new trial. The Act requires more. It requires either a likelihood—that is something more than a 50% chance—of reversal, or a substantial chance of reversal, or at least a substantial question of law or fact which has not been foreclosed on appeal, for example, by a specific Seventh Circuit precedent which is unlikely to be changed by the Court of Appeals or considered by the Supreme Court.

■ In their post-trial motions, the defendants raised what the court has called a "serious" issue based on the fact that the defendants were represented by the same lawyer. Dual representation generally raises a serious legal question. However, for the reasons stated in the court's opinion of October 18, 1984 denying the post-trial motions, the attorney's conflict of interest was knowingly waived by the defendants. The issue is not substantial and the chance for reversal or a new trial order is neither likely nor substantial. Since the defendants cannot succeed under any of these possible standards, the court declines to define more specifically the requirements of the Act.

The government has also urged that Biagio Cirrincione has not demonstrated by clear and convincing evidence that he is not likely to flee. The court has reserved ruling on this issue pending receipt of further information from the parties.

The court is convinced, and the government does not disagree, that Tom Cirrincione neither poses a danger to the community nor a risk of flight. The sole reason for denying Tom Cirrincione's motion would be his failure to demonstrate a likelihood or a substantial chance of reversal on appeal. Hence, in his case, application of the Bail Reform Act of 1984 results in incarceration pending appeal where he would otherwise be released. This requires the court to examine the argument that application of the new provisions concerning bond pending appeal in this case violates the federal ex post facto clause.

### Ex Post Facto Clause

Article I, § 9 of the United States Constitution prohibits Congress from passing any "ex post facto" law. This clause was adopted to protect an individual's right to fair notice when the government changes "that conduct which will give rise to criminal penalties," *Marks v. United States,* 430 U.S. 188, 191, 97 S.Ct. 990, 992, 51 L.Ed.2d 260 (1977); or "increases punishment beyond what was prescribed when the crime was committed," *Weaver v. Graham,* 450 U.S. 24, 30, 101 S.Ct. 960, 965, 67 L.Ed.2d 17 (1981); or "deprives one charged with crime of any defense available according to law at the time when the act was committed." *Beazell v. Ohio,* 269 U.S. 167, 169–70, 46 S.Ct. 68, 68, 70 L.Ed.2d 216 (1925).

In the most recent ex post facto case decided by the Supreme Court, *Weaver v. Graham,* 450 U.S. at 29, 101 S.Ct. at 964 (1981), the Court noted that two critical elements must be present for a criminal or penal law to be held ex post facto: it must apply to criminal acts occuring before its enactment into law, and it must disadvantage the offender affected by it. The Bail Reform Act of 1984 facially fits these criteria. First, the Act retrospectively affects all defendants whose crimes occurred before the effective date of the Act, October 12, 1984. Secondly, the Act severely limits the availability of bond pending appeal and is disadvantageous to defendants who routinely seek to delay commencement of their sentences by obtaining release on bail pending appeal.

The Supreme Court has repeatedly recognized, however, that no ex post facto violation occurs by retrospective operation of a purely procedural change in the law even though a particular criminal defendant is thereby disadvantaged. In *Dobbert v. Florida,* 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977), the Court upheld retro-

active application of a statute reversing the roles of judge and jury in determining a sentence of death, despite the fact that the new statute allowed the judge to disregard a jury recommendation of mercy which would have been binding under previous law. In *Beazell v. Ohio*, 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216 (1925), the Court upheld retroactive application of a statutory amendment eliminating an earlier prohibition against joint trials, despite the contentions of the defendants in those cases that they were thereby prejudiced. Finally, in *Hopt v. Utah*, 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262 (1884), the Court found no ex post facto problem in retrospective operation of a statute allowing convicted felons to serve as competent witnesses. In all these cases, the Court reasoned that purely procedural changes in the law are not ex post facto unless these changes make criminal a previously innocent act, change the proof necessary to convict, or increase the punishment for a particular crime. *See, e.g., Hopt*, 110 U.S. at 589, 4 S.Ct. at 209.

In other cases, however, the Supreme Court has recognized that procedural changes in the criminal law may so affect substantial rights as to fall within the ex post facto prohibition. In *Kring v. Missouri*, 107 U.S. 221, 2 S.Ct. 443, 27 L.Ed. 506 (1882), the Court invalidated retrospective application of a state constitutional amendment allowing a defendant to be tried for first-degree murder after a previous conviction for second-degree murder had been reversed on appeal. Under the law in effect at the time the offense was committed, the conviction for second-degree murder would have amounted to an acquittal of the first-degree murder charge regardless of events on appeal. The Court held that the defendant's right to plead the second-degree murder conviction as a bar to more serious charges could not be taken away retrospectively.

Similarly, in *Thompson v. Utah*, 170 U.S. 343, 18 S.Ct. 620, 42 L.Ed. 1061 (1898), the Court held that a Utah constitutional provision allowing trial by a jury of eight in non-capital cases was ex post facto in application to crimes committed within its limits

while Utah was still a federal territory, since Utah was at that time subject to the then constitutional requirement that juries in felony cases be composed of twelve persons. The Court recognized that matters of procedure generally do not trigger ex post facto concerns but reasoned that the decrease in the number of jurors necessary to convict "materially impair[ed] the right of the accused to have the question of his guilt determined according to the law as it was when the offense was committed." *Id.* at 351, 18 S.Ct. at 623. Subsequent cases, however, have limited the rationale of *Thompson* to changes in *constitutional* procedural rights by stating that a defendant is disadvantaged only when a procedural *right* is taken away, not when a change in procedure advantages the prosecution. *See* Note, *Ex Post Facto Limitations on Legislative Power*, 73 Mich.L.Rev. 1491, 1510–11 (1975).

Defendants have argued that application of the Bail Reform Act to them would both increase punishment and take away substantial rights in violation of the ex post facto clause. The latter argument responds to the government's contention that the Act is "merely procedural" and derives from the following passage in *Beazell v. Ohio*, 269 U.S. 167, 171, 46 S.Ct. 68, 69, 70 L.Ed. 216 (1925):

> Just what alterations of procedure will be held to be of sufficient moment to transgress the constitutional prohibition cannot be embraced within a formula or stated in a general proposition. The distinction is one of degree. But the constitutional provision was intended to secure substantial personal rights against arbitrary and oppressive legislation, and not to limit the legislative control of remedies and modes of procedure which do not affect matters of substance.

In no case, however, has a procedural change in the law been held to have ex post facto implications absent an increase in punishment or a change in the quantity and degree of proof necessary to establish a defendant's guilt. Thus, the "substantial rights" language of *Beazell* is just another

way of stating that alterations in what constitutes criminal conduct or the limits of punishment for a recognized crime will not escape ex post facto scrutiny merely because enacted in "a seemingly procedural form." *Weaver v. Graham*, 450 U.S. 24, 29 n. 12, 101 S.Ct. 960, 964 n. 12, 67 L.Ed.2d 17 (1981).

Since the Bail Reform Act does not criminalize conduct that was innocent when done or otherwise affect the question of defendants' guilt or innocence, it is clear that the Act is ex post facto only if the denial of release on bail pending appeal amounts to a retroactive enhancement of punishment, i.e., if accelerating the time when imprisonment commences for defendants who choose to appeal and could establish eligibility for post-conviction release under the old but not the new statute constitutes an "increase" in punishment.

Defendants have cited several state law cases in support of this contention, but none of them is particularly instructive. The first, *Parker v. State*, 667 P.2d 1272 (Alaska Ct.App.1983), relied on a state statute prohibiting retrospective application of statutes in order to avoid reaching the federal question. In *Ellis v. State*, 544 S.W.2d 908 (Tenn.Ct.Crim.App.1976), the court held that a statute denying bail pending appeal had "ex post facto" overtones but cited no cases nor discussed any reasons for its holding. In *Greene v. State*, 238 So.2d 296 (Fla.1970), the Florida Supreme Court held that retroactive application of a statute denying post-conviction bail to repeat offenders was ex post facto as to defendants both of whose felonies were committed before the statute's effective date, but cited no federal case law in support of its conclusion. *Greene* was then followed in *Cunningham v. State*, 423 So.2d 580 (Fla.Dist.Ct.App.1982), in which the appellate court, citing *Weaver v. Graham*, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), concluded without explanation that a retrospective restriction on eligibility for release on appeal bond is fully analogous to a penal provision "more onerous than the law in effect on the date of the offense." 423 So.2d at 581.

Cases which have upheld the retroactive application of bail reform statutes are somewhat more lucid, but not necessarily more persuasive. In *Spitznas v. State*, 648 P.2d 1271 (Okla.Ct.Crim.App.1982), the court conclusorily held that denial of bail while appeal is pending is neither an increase in punishment nor an "alteration of ... substantive rights on appeal" which would bring the ex post facto clause into play. In *State ex rel. Dorton v. Circuit Court*, 274 Ind. 373, 412 N.E.2d 72 (1980), the Indiana Supreme Court noted that the right to bail pending appeal does not affect a criminal defendant's "substantial rights concerning proof of the offense or the time to be served upon conviction therefor." *Id.* at 74. The *Dorton* court also relied on the ground that the "opportunity for release on appeal bond is a status which must be determined at the time a convicted person seeks such relief" and therefore does not "vest" at the time an offense is committed. *Id.* at 75. To the extent that *Dorton* relies on a "vested rights" analysis, however, its reasoning is without merit. *See Weaver*, 450 U.S. at 30, 101 S.Ct. at 965 ("The presence or absence of an affirmative, enforceable right is not relevant ... to the *ex post facto* prohibition....")

Only two federal cases to this court's knowledge have addressed the precise issue before the court. In *United States v. Davis*, 598 F.Supp. 453 (S.D.N.Y.1984) (available on WESTLAW), Judge Charles Haight rejected the defendant's ex post facto objections and granted a government motion to revoke bail pending appeal based on the intervening passage of the Bail Reform Act. Relying on *Dobbert v. Florida*, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977), and *Portley v. Grossman*, 444 U.S. 1311, 100 S.Ct. 714, 62 L.Ed.2d 723 (1980) (Rehnquist, Circuit Justice), Judge Haight held that the Bail Reform Act's new standards for obtaining post-conviction bail constituted "modes of procedure" which do not affect a defendant's "substantive personal rights, in contesting his guilt or pressing an appeal." At 468. The court did not address whether the new standards increase punishment in any way. In *United*

*States v. Dante Gill,* No. Crim. 84–87 (W.D.Pa.1984), Judge Gustav Diamond reached the opposite conclusion. In a bench opinion, Judge Diamond found that the provisions restricting bail pending appeal constituted "a substantive and substantial change in the law" which was ex post facto as to defendants whose crimes were committed prior to the statute's enactment. Judge Diamond also found the shift of the burden of proof regarding entitlement to bail to be ex post facto.[1]

Defendants initially argue that the standards for release pending appeal mandated by the new Act are "more onerous" than the standards in effect at the time they committed their crimes and therefore cannot be applied retroactively. This conclusion is not so apparent as defendants maintain. While the Supreme Court has held retrospective restrictions on parole eligibility to be ex post facto, it has done so only where operation of the new restriction effectively lengthened the term of incarceration to which defendants were subject at the time they committed their crimes. In *Weaver v. Graham,* 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), for example, the Supreme Court held that changes in Florida's statutory formula for computing "gain time" credits could not apply retrospectively. The Court reasoned that, whether or not "gain-time" credits had vested at the time of a prisoner's sentencing, the prospect for such credit "in fact is one determinant" of the length of a prisoner's incarceration so as to alter the "quantum of punishment" and thereby implicate ex post facto concerns. *Id.* at 30–33, 101 S.Ct. at 965–966.

While the Supreme Court has on at least one occasion found alterations in punitive conditions outside the sentence to be ex post facto, *see, e.g., In re Medley,* 134 U.S. 160, 169, 10 S.Ct. 384, 386, 33 L.Ed. 835 (1890) (statute requiring solitary confinement prior to execution for all prisoners sentenced to death), the rationale of *Weaver* is tied to changes in the actual term of incarceration. Under the Bail Reform Act, defendants' period of incarceration remains the same as it was before. Thus, there is no change in the "quantum" of punishment, and it is unclear at best whether *Weaver* applies.

Defendants seek to escape this conclusion by pointing to the effect that detention pending appeal will have on their ability to obtain a reduction in sentence under Fed.R. Cr.P. 35(b). Generally, Rule 35(b) motions to reduce may be made any time after sentencing up to 120 days after affirmance on appeal. A defendant who has been released pending appeal and evidenced good behavior during that time may be able to demonstrate the changed circumstances which would convince a court to reduce an earlier sentence, whereas a defendant who has been incarcerated throughout the same period might not be able to make such a showing.

■ The court recognizes that application of the Bail Reform Act significantly changes the calculus behind filing a Rule 35(b) motion and that district courts sometimes reduce sentences, or completely eliminate any period of incarceration, if during the appeal period the defendant's circumstances have changed or he has demonstrated good behavior or other positive qualities. The court also recognizes that defendants' Rule 35(b) rights cannot be disregarded simply because they have not vested. *See, supra* page 11. Nonetheless, defendants still have the right to make a Rule 35(b) motion for reduction of sentence within 120 days of sentencing and then again within 120 days of affirmance on

---

**1.** This ruling was brought to the court's attention in a Supplemental Memorandum filed by defendants with this court on January 15, 1985. In that memorandum, defendants also raise new constitutional issues for the first time regarding the due process clause and the eighth amendment. Despite defendants' effort to characterize these arguments as having been raised previously, the court notes that defendants' earlier objections were raised as a matter of statutory construction, and not as constitutional arguments. Since defendants were given leave to file supplemental authority, not to introduce new legal theories, the court declines to entertain these arguments. In light of this court's disposition of the ex post facto issue, defendants are hardly prejudiced by this decision.

appeal. Any shift in their actual ability to obtain a sentence reduction is speculative. Any effect of the Bail Reform Act on the actual length of incarceration is therefore too remote to justify the kind of reliance on criminal penalties with which the ex post facto clause is concerned.

The government has argued that the Bail Reform Act does not increase punishment by analogy to case law upholding retroactive application of the pretrial detention provisions of the Bail Reform Act and similar legislation. *United States v. Hazzard,* 598 F.Supp. 1442 (N.D.Ill.1984); *DeVeau v. United States,* 454 A.2d 1308, 1314 (D.C.Ct. App.1982), *cert. denied,* 460 U.S. 1087, 103 S.Ct. 1781, 76 L.Ed.2d 351 (1983). In *Hazzard,* Judge William T. Hart reasoned that pretrial detention under the new Act is imposed on a defendant not for having committed criminal acts, but because of the defendant's status as an arrestee whose pretrial release presents a threat to community safety which no conditions on release can reasonably prevent. At 1454–1455. Judge Hart therefore concluded that the Act's pretrial detention provisions are regulatory rather than punitive. Judge Hart also concluded that these provisions are not retrospective since the eligibility for release on bail is determined according to present status and not acts occurring before the passage of the statute. *Id.* Judge Hart then likened the Bail Reform Act to habitual offender statutes and legislation prohibiting previously convicted felons from undertaking certain activities, both of which have withstood ex post facto scrutiny. At 1454–1455. *See DeVeau v. Braisted,* 363 U.S. 144, 160, 80 S.Ct. 1146, 1154, 4 L.Ed.2d 1109 (1960) (law prohibiting previously convicted felons from participating in waterfront labor unions not ex post facto increase in punishment); *McDonald v. Massachusetts,* 180 U.S. 311, 21 S.Ct. 389, 45 L.Ed. 542 (1901) (laws creating aggravated penalties for recidivist criminal activity not ex post facto even though predicate offense predates statute); *United States v. Sutton,* 521 F.2d 1385, 1390–91 (7th Cir.1975) (Congress constitutionally allowed to restrict criminals whose felonies occurred in the past from receiving firearms).

▮ To the extent that the post-conviction bail provision of the new Act is regulatory and not punitive, it necessarily falls outside the prohibitions of the ex post facto clause:

> The mark of an *ex post facto* law is the imposition of what can fairly be designated punishment for past acts. The question in each case where unpleasant consequences are brought to bear upon an individual for prior conduct, is whether the legislative aim was to punish that individual for past activity, or whether the restriction comes about as a relevant incident to a regulation of a present situation....

*DeVeau v. Braisted,* 363 U.S. 144, 160, 80 S.Ct. 1146, 1154, 4 L.Ed.2d 1109 (1960). However, unlike the pretrial detention provisions which are concerned solely with safety of the community, the post-conviction bail restrictions are not unrelated to punishment nor merely incidental to regulation of a present situation. In the legislative history accompanying § 3143, Congress expressed the notion that swifter punishment is a greater deterrent to criminal conduct: "release of a criminal defendant into the community after conviction may undermine the deterrent effect of the criminal law, especially in those situations where an appeal of the conviction may drag on for many months or even years." S.Rep. No. 98–225, at 26, 98th Cong., 2d Sess. (1984); S.Rep. No. 98–147, at 562, 98th Cong., 1st Sess. (1983); S.Rep. No. 97–317, at 56, 97th Cong., 2d Sess. (1982). Congress therefore specified that the former presumption in favor of bail pending appeal was to be eliminated, and that defendants must establish a substantial chance or likelihood of reversal before post-conviction release pending appeal will be ordered.

By viewing the restrictions on release pending appeal to be a deterrent to crime, Congress must have concluded that a sentence which commences immediately upon conviction is somehow more severe than a

sentence which commences only after appeal. Certainly, a sentence which commences before, rather than after, appeal, is more certain to be served. For example, the defendant may die during the interim period. Not all procedural changes increasing the certainty of conviction, however, will be ex post facto when applied to prior criminal acts. *See, e.g., United States ex rel. Massarella v. Elrod,* 682 F.2d 688, 689 (7th Cir.1982) (extension of statutes of limitation before a given prosecution is barred). Certainly, if Congress were to increase prosecutorial capacity to investigate crime, the law achieving that increase could be applied to crimes committed before its effective date without offending the ex post facto clause. That a criminal defendant might escape punishment altogether for reasons unrelated to his guilt or to the process of justice is not an expectation worthy of protection against retroactive impairment.

On the other hand, that people generally value the present more than the future cannot be ignored for ex post facto purposes. One need not be an economist to believe that a sentence which commences, for example, two years from now is less onerous than a sentence which commences today.[2] By amending former § 3148 to help deter crime, Congress has implicitly recognized that criminals consider the date on which a period of imprisonment commences to be part of the price paid for unlawful activity. While the Supreme Court has not always been clear on the underlying rationales for the ex post facto clause, certainly one rationale is that an individual who acts in reliance upon the known criminal penalties for his acts must be punished in accordance with that reliance. That rationale, by Congress's own determination, is fully implicated here.

More importantly, however, at least some of the reasons that defendants seek bail pending appeal are entitled to protection from retroactive impairment. A defendant sentenced to imprisonment who chooses to appeal his conviction has hope, however unjustified by the statistics, of reversing that conviction or even obtaining a judgment of acquittal. Under former § 3148, those defendants within this class whose appeals were not shown to be frivolous also had an expectation that success on appeal would mean a release from punishment altogether. By restricting eligibility for release pending appeal, the new Act takes away that expectation.

This expectation—while not always reasonable—is of longstanding historical importance. As long ago as 1895, the Supreme Court noted that the statutes of the government "have been framed upon the theory that a person accused of a crime shall not, until he has been fully adjudged guilty in the court of last resort, be absolutely compelled to undergo imprisonment or punishment, but may be admitted to bail, not only after arrest and before trial, but after conviction and pending a writ of error." *Hudson v. Parker,* 156 U.S. 277, 285, 15 S.Ct. 450, 453, 39 L.Ed. 424 (1895). *Accord, United States v. Motlow,* 10 F.2d 657, 662 (7th Cir.1926). The right to bail pending appeal, while not itself constitutionally guaranteed, has nonetheless been deemed necessary in order to make the defendant's right to appeal fully effective and is therefore more than "merely proce-

---

**2.** People's preference for the present over the future has been documented by several economists. Mancur Olson and Martin Bailey concluded in a 1981 study that the case for positive time preference is absolutely compelling. *Positive Time Preference,* 89 J.Pol.Econ. 1 (1981). *See also* Easterbrook, *Criminal Procedure as a Market System,* 12 J. Legal Studies 289, 294–95 (1983):

[P]eople discount the future.... The threat of spending next year in jail is more serious than the threat of spending one year in jail ten years from now. For many people, the opportunities of the present seem more important than those of the future, and even people who weigh years of their lives equally will consider the possibility that the state will relent or they will die before the tenth year arrives. Prison disrupts the formation of human capital and also creates a stigma that may reduce future income substantially. Although it is not possible to know the size of this discount with certainty—for some people there are countervailing considerations, such as growth of income, that may make prison in the future especially onerous compared to prison now—it seems reasonable to assume that the discount and risk factors together are significant.

dural." *See Patterson v. United States,* 75 S.Ct. 256, 257, 99 L.Ed. 1296 (1954) (Frankfurter, Circuit Justice) ("[T]he actual operation of the appellate procedure should not be allowed, through the denial of bail, to render the right to appeal nugatory.") Unlike rules regarding the competency of witnesses or the vesting of sentencing discretion in judge as opposed to jury, eligibility for release pending appeal is a right personal to the defendant the retroactive restriction of which can only work to his or her detriment.

While the Supreme Court has never addressed the issue directly, support for this conclusion can be gleaned from *Rooney v. North Dakota,* 196 U.S. 319, 25 S.Ct. 264, 49 L.Ed. 494 (1905). In *Rooney,* the Supreme Court held that extending the time before a death sentence can be executed is a mitigation in punishment. The language of the case is revealing:

> The giving, by the later statute, of three months' additional time to live, after the rendition of judgment, was clearly to [the prisoner's] advantage, for the court must assume that every rational person desires to live as long as he may. If the shortening of the time of confinement ... before execution, would have increased, *as undoubtedly it would have increased,* the punishment to the disadvantage of a criminal sentenced to be hung, the enlargement of such time must be deemed a change for his benefit.

196 U.S. at 325, 25 S.Ct. at 266 (emphasis added). The court further noted that the extension of the time to live not only increased the prisoner's life, however, but also "increased the opportunity of the accused to obtain a pardon or commutation from the governor of the state before his execution." *Id.* at 325–26, 25 S.Ct. at 265–66.

*Rooney* is distinguishable in that a defendant sentenced to death whose execution of sentence is postponed thereby gains longer life whereas defendants who postpone a period of incarceration merely exchange time today for time tomorrow. Even so, the court finds that most rational persons desire to put off punishment as long as they may. While countervailing considerations, such as family, income, or the desire to resume a normal life, may cause some criminals to choose punishment now, similar countervailing factors may cause a defendant sentenced to death to choose execution now and avoid prolonged anxiety. More importantly, however, the new Act does not affect defendants who wish to commence their sentences immediately upon conviction; only those who seek release pending appeal are disadvantaged.

The second rationale of *Rooney* —that enlargement of the time before execution increases the possibility of a commutation or pardon—is, of course, fully applicable to the present situation. The defendant who is on release pending appeal thereby increases the possibility that a Rule 35(b) motion for reduction of sentence might be granted which would prevent his or her ever being sent to prison. As noted earlier, the possibility that this will happen is speculative, but certainly no more so than the possibility that a prisoner sentenced to death will obtain a governor's pardon. The language of *Rooney* —admittedly dictum— thus suggests an additional ground for finding that application of the Bail Reform Act of 1984 to the Cirrinciones offends ex post facto prohibitions.

■ In light of all these factors, the court concludes that the Bail Reform Act's standards for release pending appeal cannot be applied to offenses committed before October 12, 1984 without offending the ex post facto clause. The apparent purposes of the Act—to eliminate dilatory appeals and to help deter crime—are laudatory ones, but may not be used to enhance punishment of those who committed unlawful acts in possible reliance on previous standards. Since the Cirrinciones' crimes took place prior to October 12, 1984, their eligibility for release on appeal must be governed by former 18 U.S.C. § 3148. As already explained, Tom Cirrincione meets those standards and his motion for release on bond pending appeal is therefore granted. Defendant Biagio Cirrincione's motion is taken under advisement pending the re-

ceipt of further information as to whether he is a flight risk.

Accordingly, defendant Tom Cirrincione's motion for release on bond pending appeal is granted. Defendant Biagio Cirrincione's motion for release on bond pending appeal is taken under advisement.

It is so ordered.