### UNITED STATES of America

v.

### Rose GIANGROSSO.

### No. 84 CR 79.

United States District Court, N.D. Illinois, E.D.

Feb. 6, 1985.

---

**698**

ORDER

ROSZKOWSKI, District Judge.

Before the court are the defendant's motion to set bond pending appeal and the government's motion to set a surrender date. For the reasons set forth herein, the defendant's motion to set bond pending appeal is denied, and the government's motion to set a surrender date is granted. Defendant is ordered to surrender to the United States Marshal in Chicago before Noon on February 26, 1985.

## I. BACKGROUND

On June 29, 1984, a jury convicted the defendant of violations of the federal narcotic laws. On September 25, 1984, this court sentenced the defendant to eighteen months incarceration. Defendant was ordered to surrender on October 25, 1984.

On October 12, 1984, the President signed into law the Bail Reform Act of 1984. 98 P.L. 473 (1984) Among the provisions of that Act is an amendment restricting the availability of bail pending the outcome of an appeal. On November 8, 1984, defendant presented a motion for the setting of bond pending appeal. This court granted the parties an opportunity to submit briefs concerning the effect of the new Act on the defendant's request for bond, and stayed the defendant's reporting date pending the outcome of the various motions.

## III. DISCUSSION

### A. *The Bail Reform Act*

Prior to October 12, 1984, Title 18, Section 3148, provided, in relevant part, that a defendant filing a notice of appeal:

... shall be treated in accordance with the provisions of Section 3146 *unless* the court or judge has reason to believe that no one or more conditions of release will reasonably assure that the person will not flee or pose a danger to any other person or to the community. If such a risk of flight or danger *is believed to exist,* or if it appears that an appeal is frivolous or taken for delay, the person may be ordered detained. (emphasis added) 18 U.S.C. § 3148 (1982).

Similarly, Section 3146 provided:

Any person charged with an offense, other than an offense punishable by death, *shall* ... be ordered released pending trial on his personal recognizance or upon the execution of an unsecured appearance bond ... *unless* the [judicial] officer determines, in the exercise of his discretion, that such a release will not reasonably assure the appearance of the person as required.... (emphasis added) 18 U.S.C. § 1346 (1982).

On October 12, 1984, Title 18, Section 3143(b) was amended to provide that a defendant found guilty and sentenced to a term of imprisonment *shall* be detained pending the outcome of his or her appeal *unless* the judicial officer finds:

(1) *by clear and convincing evidence* that the person is not likely to flee or pose a danger to the safety of any other person or the community if released pursuant to section 3142(b) or (c); *and*

(2) that the appeal is not for the purpose of delay and raises a substantial question of law or fact *likely to result in reversal or an order for a new trial.*

If the law in effect prior to October 12, 1984 were held to apply, this court would have little difficulty in finding the defendant is entitled to be released on bond. The defendant has appeared for every scheduled court appearance and there is no rea-

son to believe she poses a danger to any other person or the community. If this court were to apply the new law, however, this court would be forced to decide the defendant is not entitled to release on bail. This court cannot conclude defendant's appeal is likely to result in reversal or an order for a new trial. Thus, the issue in the present case is whether the old or new bail provisions should apply.

**B.  *Ex Post Facto Clause***

Defendant contends the ex post facto clause bars application of the Bail Reform Act in the present case. Federal courts deciding the issue in the present context have reached contrary conclusions. In *United States . v. Davis*, 598 F.Supp. 453 (S.D.N.Y.1984), the court, construing the bail modifications as procedural and not substantive, held the ex post facto clause did not apply. In *United States v. Cirrincione*, 600 F.Supp. 1436 (N.E.Ill.1985) (Getzendanner, J.) the court, construing the bail modifications as increasing the punishment imposed upon convicted defendants eligible for bond under the prior law, held the ex post facto clause barred the application of the new Act to defendants whose conduct occurred prior to its effective date.

In holding the ex post facto clause does not apply, the court in *Davis* relied upon *Dobbert v. Florida*, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977) and *Portley v. Grossman*, 444 U.S. 1311, 100 S.Ct. 714, 62 L.Ed.2d 723 (1980) (Rehnquist, Circuit Justice).[1] In *Dobbert*, the defendant committed a series of murders and other criminal acts at a time when state law provided that

a defendant convicted of murder by a jury could not be sentenced to death if the jury's verdict included a recommendation of mercy. At the time of his trial, however, the state law had been amended to allow the trial judge to disregard the jury's recommendation. After his trial, the jury recommended mercy, but the trial judge imposed the death penalty. The defendant contended the retrospective application of the amended law violated the ex post facto clause.

The Supreme Court denied the defendant's ex post facto challenge, holding the amendment was merely procedural. The court held, "[e]ven though it may work to the disadvantage of a defendant, a procedural change is not ex post facto." *Id.*, 432 U.S., at 293, 97 S.Ct. at 2298. In determining the statutory change was merely procedural, the court noted:

The new statute simply altered the methods employed in determining whether the death penalty was to be imposed; there was no change in the quantum of punishment attached to the crime. *Id.* at 293–94, 97 S.Ct. at 2298–99.

In *Portley*, Judge Rehnquist denied a petition to stay a Ninth Circuit mandate pending the disposition of the petitioner's request for a writ of certiorari. The petitioner challenged the Federal Parole Commission's use of its present parole eligibility standards to establish the petitioner's presumptive reparole date. The petitioner contended the ex post facto clause required the Parole Commission to calculate his reparole date on the basis of the standards in

---

**1.** The Supreme Court's most recent interpretation of the ex post facto clause, *Weaver v. Graham*, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), was not discussed by the *Davis* court. In *Weaver*, the petitioner sought to challenge state law changes modifying the manner in which "gain time" credit towards release was given to state inmates. The challenged modifications lowered the amount of time *automatically* deducted, but provided additional discretionary gain time which could be given as an award by prison officials. The court sustained the petitioner's statutory challenge, holding the retrospective application of the Act to prisoner's convicted for acts committed before its effective

date violated the ex post facto clause. The court rejected the state's claim that the modifications in the state's system for determining gain time credit were merely procedural, stating:

We need not give lengthy consideration to respondent's claim that the challenged statute ... is merely procedural because it does not alter the punishment prescribed for petitioner's offense. * * * This contention is incorrect, given the uncontested fact that the new provision reduces the quantity of gain time automatically available, and does not merely alter procedures for allocation. *Id.* at 36, f.n. 21, 101 S.Ct. at 968, f.n. 21.

effect at the time he was originally sentenced. Quoting *Dobbert,* Judge Rehnquist summarily disposed of the petitioner's argument, noting the ex post facto clause:

> " . . . is intended to secure 'substantial personal rights' from retroactive deprivation and does not 'limit the legislative control of remedies and modes of procedure which do not affect matters of substance'."

In holding the ex post facto clause applies, the court in *Cirrincione* found the denial of bail to defendants who could establish eligibility for post-conviction release under the old but not the new statute amounts to a retroactive enhancement of punishment. 600 F.Supp. at 1440–1441. While the court admitted there was "no change in the 'quantum' of punishment", the court found: (1) that a sentence which commences immediately upon conviction is more severe than a sentence which commences only after appeal because "people generally value the present more than the future," and (2) that a sentence which commences immediately upon conviction is more severe because it reduces "the possibility that a Rule 35(b) motion for reduction of sentence might be granted." *Id.* at 1442–1445. Finally, the court noted that some of the reasons that defendants seek bail pending appeal, hope of reversing a conviction or, as noted previously, hope of increasing the possibility that a Rule 35(b) motion for a reduction of sentence might be granted, are entitled to protection from retroactive impairment. *Id.,* 1444–1445.

In the view of this court, the *Davis* court was correct in holding the new Act is merely procedural and does not alter the punishment proscribed for the defendant's offense. Regardless of whether the *Cirrincione* court was correct in speculating that defendants regard the present commencement of sentences,[2] the possibility that a defendant may be required to immediately commence his or her sentence is not new. Prior law clearly authorized a district judge to require a convicted defendant to begin immediately serving his sentence. Only the procedure for determining whether the defendant's sentence should be immediately commenced has been altered by the new Act. *See Dobbert v. Florida,* 432 U.S. 282, 293–94, 97 S.Ct. 2290, 2298–99, 53 L.Ed.2d 344 (1977).

Moreover, the same argument applies with respect to the *Cirrincione* court's Rule 35 rationale. Regardless of whether the *Cirrincione* court was correct in speculating that the immediate commencement of a sentence reduces the possibility that a Rule 35(b) motion for reduction of sentence will be granted,[3] the possibility that a defendant might be required to immediately commence a sentence, consequently decreasing the likelihood of Rule 35(b) relief, is not new. Once again, only the procedures utilized in making that determination have been altered. *Id.*

Finally, the *Cirrincione* court's contention that some of the reasons that defendants seek bail pending appeal are entitled to protection from retroactive impairment is unpersuasive. The ex post facto clause does not bar retrospective impairment of all rights. Moreover, as the *Cirrincione* court noted, the right to bail pending appeal is not constitutionally guaranteed. 600 F.Supp. at 1444; *Iles v. Ellis,* 264 F.Supp. 185, 196 (S.D.Ind.1967). Thus, in view of this court's previous ruling that the subject Act does not amount to a retrospective enhancement of punishment, the retro-

---

**2.** The *Cirrincione* court admits that " . . . countervailing considerations, such as family, income, or the desire to resume a normal life, may cause some criminals to choose punishment now. . . ." 600 F.Supp. at 1445.

**3.** The *Cirrincione* court admits that "[a]ny shift in [convicted defendants'] actual ability to obtain a sentence reduction is speculative." 600 F.Supp. at 1443. The contention that defendants' demonstrating good behavior while released on bond pending appeal are likely to enhance their chance of obtaining Rule 35(b) relief rests upon the questionable belief that sentencing is solely for the purpose of rehabilitation. To the extent that a sentence is imposed as a punishment or for the purpose of deterrence, however, demonstrated good behavior would have little impact on a Rule 35(b) petition.

spective impairment of defendant's other "reasons" for seeking bail pending appeal does not implicate the ex post facto clause.

## CONCLUSION

In sum, the instant Act does not increase the quantum of punishment which may be imposed upon a defendant or even create a previously non-existent possibility of immediate imprisonment. Rather, it simply changes the methods employed in determining whether a defendant should immediately begin serving his or her sentence. Thus, defendant's ex post facto clause challenge must be denied. Defendant is ordered to surrender to the United States Marshal in Chicago before Noon on February 26, 1985.