**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Glen SHOFFNER, Defendant-Appellee.**

**No. 86–1157.**

United States Court of Appeals,
Seventh Circuit.

Submitted March 14, 1986.

Decided May 27, 1986.

Rehearing and Rehearing En Banc
Denied June 30, 1986.

---

David Capp, Asst. U.S. Atty., Hammond, Ind., for plaintiff-appellant.

Michael D. Monico, Monico & Pavich, Chicago, Ill., for defendant-appellee.

Before WOOD, CUDAHY and POSNER, Circuit Judges.

PER CURIAM.

Glen Shoffner was convicted in a jury trial of conspiracy, mail fraud and the sale of stolen motor vehicles, all in connection with the operation of an automobile "chop shop." After sentencing the district judge allowed Shoffner to remain free on bond pending appeal. The government appeals that order under 18 U.S.C. § 3145(c), arguing that the judge did not find the issues on appeal to be "substantial" enough to permit Shoffner to remain at liberty under the appropriate provisions of the Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq.*, and specifically § 3143(b). The government's appeal has been processed as a motion under *United States v. Daniels*, 772 F.2d 382, 383–384 (7th Cir.1985). We now grant the government's motion and reverse the district court's order.

I

On January 2, 1986, Shoffner was sentenced to a total of 14 years imprisonment on his convictions. After sentencing the district court asked for the government's position on bond pending appeal. Citing our decisions in *United States v. Greenberg*, 772 F.2d 340 (7th Cir.1985) and *United States v. Bilanzich*, 771 F.2d 292 (7th Cir.1985), the government contended that Shoffner's appeal did not present a "substantial question" within the meaning of 18 U.S.C. § 3143(b). Shoffner's counsel argued that the issues raised would require a new trial if this court were to reverse, and therefore that bail was appropriate.

In granting Shoffner's request for bail the district judge made several comments to the effect that he found the *chances* for reversal "remote" and the question presented by the appeal not substantial.[1]

---

**1.** The district judge made the following comments on Shoffner's chances of winning a reversal of his conviction. The citations are to the transcript of the January 2 sentencing and bail hearing:

Page 24: "... I am certainly not going to concede there is a substantial question to be presented."

Pages 25–26: "... I in all honesty do not believe there is a substantial chance of reversal as to this defendant. I sincerely do not." Page 26: "I don't think you are going to prevail on that appeal." Page 27: "Now I frankly in view of the law in this Circuit don't think you are going to prevail on that appeal."

Contrarily, he also stated that "[t]here can be very little doubt that [Shoffner's] due process defense raises a substantial question," and that, although *he* did not think Shoffner would prevail,

> some panel of some court someplace might—you might get two out of three Judges to go with you on it. That isn't likely. But it is a substantial question. I don't have any problem with that idea at all. I don't know how much guessing about the—and reading the judicial tea leaves at the appellate level that all of this requires me to do.

*Transcript of Sentencing Hearing,* January 2, 1986, at p. 27.[2] The government asserts in view of all these statements that the judge found no substantial *likelihood* of reversal and therefore should have denied bail based on his own findings.

## II

Under the terms of the Bail Reform Act of 1984 governing bail pending appeal (18 U.S.C. § 3143(b)), a convicted person must be detained *unless* the district court finds that he is not a risk of flight or a danger to the community (§ 3143(b)(1)) *and* that his appeal "is not for purpose of delay and raises a substantial question of law or fact likely to result in reversal or an order for a new trial," (§ 3143(b)(2)). The government has not argued that Shoffner is dangerous or that he will flee, or that he appeals only to delay; rather it asserts that his chances of winning in this court are too small to justify release.

Read literally, § 3143(b)(2) would not allow a district judge to grant bail pending appeal unless he believed that the conviction probably was going to be reversed, in which case he should have granted a new trial himself. This reading, which would essentially have abolished bail pending appeal, was first rejected in *United States v. Miller,* 753 F.2d 19, 22–24 (3d Cir.1985). We adopted the *Miller* court's reasoning in *Bilanzich,* noting also that "were we to ask [a] trial court to determine whether one of its own rulings was likely to be reversed, the word 'substantial' would be rendered redundant." 771 F.2d at 299. *See also Greenberg,* 772 F.2d at 340–341; *United States v. Thompson,* 787 F.2d 1084, 1085 (7th Cir. April 15, 1986).

The *Miller* court applied a two-step approach to § 3143(b)(2), an approach we also adopted in *Bilanzich.* A court considering bail pending appeal must first determine whether the question raised by the appeal is "substantial," and then must determine whether a contrary appellate ruling is likely to require reversal of the conviction or a new trial. *Bilanzich,* 771 F.2d at 298; *Miller,* 753 F.2d at 23. The district court did not specifically address this second factor. We will assume, based on the parties' discussion of the issues on appeal in memoranda filed with this court, that a contrary ruling would require that Shoffner receive a new trial.

The district judge's remarks at the hearing indicate that he was troubled by this court's interpretation of the word "substantial."[3] This is a new aspect of bail law that is in need of further clarification. At several points the judge addressed Shoff-

---

Page 29: "I don't think there is any reversible error in this record. However, in the eye of some judicial beholder there might be some remote substantial chance of a reversal here. And I think it is remote in the extreme."

**2.** The "due process" defense mentioned above and at the hearing involved the government's use of an informant who testified to statements made about Shoffner by an alleged co-conspirator. In order to avoid prejudging of this appeal, we will not comment on this issue at any length.

**3.** The judge's confusion may have been caused in part by a desire to convey to this court confidence in his decision to let Shoffner's convictions stand:

> The last thing I ever want to hear happening in this case is any defense lawyer to go up to the Court of Appeals and say the Judge by ruling conceded that something—there is some error in this record because I categorically deny any such belief. I don't think there is any reversible error in this record.

*Transcript* at page 29. We would not regard a decision to grant bail pending appeal as a concession by the trial judge that he lacked confidence in his decision, but rather as an acknowledgement that some legal questions are simply harder to resolve than others.

ner's "chance" of obtaining reversal, which he felt was small. He also found that Shoffner's defense presented a question of some weight. The government argues that the former finding is dispositive of Shoffner's bail status, and that absent a strong chance of reversal bail pending appeal must be denied.

### III

Whenever a court is asked to provide some form of preliminary relief or relief pending the outcome of further proceedings, its task is in some sense predictive. An assessment of what will probably happen in the future must be made in order to determine how best to avoid irreparable loss because of an erroneous decision. It is for this reason that a convicted person must demonstrate that he has a substantial question to present to this court before he may be admitted to bail. Congress' desire to reverse what it perceived as a "presumption in favor of bail even after conviction" under prior bail law [4] demonstrates its recognition that harm results not only when someone is imprisoned erroneously, but also when execution of sentence is delayed because of arguments that in the end prove to be without merit. Some showing is therefore necessary to assume that post-conviction bail is confined to those who are among the more promising candidates for ultimate exoneration.

■ Nevertheless, a district court evaluating the substantiality of appeal issues should not base its bail determination on its assessment of a defendant's chances of getting some panel of the Court of Appeals to agree with him. Such an interpretation would direct attention to the *appellate* de-cision-maker, as is demonstrated by the district court's speculation that Shoffner might find two judges "someplace" to go along with his arguments. *Transcript* at 27. Instead the court should return its attention to its *own* analysis of these issues at earlier stages of the proceedings.

■ As we pointed out in *Bilanzich,* "whether a question is ' "substantial" defines the *level of merit* required in the question presented ...'." 771 F.2d at 299, *quoting United States v. Handy,* 761 F.2d 1279, 1280 (9th Cir.1985) (emphasis in *Handy*). In determining whether a question is "substantial" as that word is used in 18 U.S.C. § 3143(b)(2), a judge must essentially evaluate the difficulty of the question he previously decided. This function will, of course, retain its predictive character because appeals with more merit have a correspondingly greater "chance" of resulting in reversal.

■ In guiding the district courts in their evaluation of the substantiality of appeal issues, we have adopted the formulation of the Eleventh Circuit in *United States v. Giancola,* 754 F.2d 898, 901 (11th Cir.1985), which defined a "substantial" appeal as one that presents "a 'close' question or one that very well could be decided the other way." [5] Several cases, including *Miller,* 753 F.2d at 23, have referred to other factors that might influence this evaluation, such as the existence or lack of controlling precedent or the novelty of the question. We believe that the *Giancola* test's meaning will be readily apparent to judges and lawyers, who should find it "relatively easy to apply." *United States v. Powell,* 761 F.2d 1227, 1232 (8th Cir. 1985) (*en banc*). Further definition might

---

**4.** S.Rep. No. 225, 98th Cong., 1st Sess. at 26, *reprinted in* 1984 U.S.Code Cong. & Ad.News at 3182, 3209.

**5.** *Thompson,* 787 F.2d at 1085; *Greenberg,* 772 F.2d at 341; *Bilanzich,* 771 F.2d at 298–299. We first adopted the *Giancola* definition in *United States v. Molt,* 758 F.2d 1198, 1200 (7th Cir. 1985). It has also been adopted by six of the eight other Circuits that have considered the question. *See United States v. Bayko,* 774 F.2d 516, 523 (1st Cir.1985); *United States v. Randell,* 761 F.2d 122, 125 (2d Cir.1985); *United States v. Valera-Elizondo,* 761 F.2d 1020, 1024 (5th Cir. 1985); *United States v. Pollard,* 778 F.2d 1177, 1182 (6th Cir.1985); *United States v. Powell,* 761 F.2d 1227, 1232 (8th Cir.1985) (*en banc*); *United States v. Affleck,* 765 F.2d 944, 952 (10th Cir.1985). *But see Handy,* 761 F.2d at 1283 (adopting a "fairly debatable" or "fairly doubtful" standard); *Miller,* 753 F.2d at 23 ("fairly doubtful").

give the impression that this determination is susceptible of mathematical precision.[6]

## IV

Although the district judge's language leaves us with some uncertainty, we believe that he did conclude that Shoffner had presented a substantial question, although his chances of winning in this court were found to be small. We have examined the issue ourselves with the aid of supplemental memoranda filed by the parties. Although we owe some deference to the district court's "firsthand judgment of the situation," our review of release (or detention) orders under 18 U.S.C. § 3143(b) is independent. *United States v. Bayko*, 774 F.2d 516, 519–520 (1st Cir.1985). We conclude that the issues raised by Shoffner do not present a substantial question under the test discussed above.[7]

Accordingly, the order releasing defendant Shoffner pending appeal is REVERSED. This appeal is REMANDED to the district court for revocation of Shoffner's bond.

CUDAHY, Circuit Judge, concurring:

Although the question is certainly not free from doubt (and the doubt may be "substantial"), I join in the panel's discussion of 18 U.S.C. § 3143(b)(2) and in the result reached here. I am not sure, however, that our discussion will make anything easier for Judge Sharp or for his colleagues on the district bench. Whatever we may say about it, the language of the statute does seem to require a district judge to place a bet against himself when he elects to release a convicted defendant on bail. The reversal rate for criminal appeals in this circuit in 1985 was 5.0%, and as a statistical matter the likelihood of reversal in any particular case seems unpromising in the extreme. For this reason, this court—and others—have sought to give a meaning to "substantiality" which draws its essence from something other than the probabilities. Nonetheless, one still seems to be peeking at those probabilities out of the corner of one's eye.

I would hope, therefore, that at least as our understanding of the subject deepens, we could be increasingly deferential to the district court in these matters. The intangibles are so significant in sorting out "close" cases from "not-so-close" cases that the district court is far better placed than we to make that judgment. And, again whatever we say, our own "independent" evaluation must smack of prejudgment of the main appeal. With these cautionary notes, I join in the disposition made here by the panel.

---

**6.** In *Greenberg* we offered another formulation, stating that a "close" appeal is one that "could readily go either way, that it is a toss-up or nearly so." 772 F.2d at 341. This was not intended to modify the *Giancola* standard, but merely to restate it in different words.

**7.** As we noted *supra* n. 2, we will not comment on the issues Shoffner now presses in the appeal of his conviction. Our determination here in no way binds the panel that will ultimately review the merits of that appeal. *Bilanzich*, 771 F.2d at 298 n. 6.